J. F. ADAMS

*vs.*

THE CITY OF MINNEAPOLIS.

Under the provisions of the charter of the present city of Minneapolis, (*chap.* 10, *Sp. Laws*, 1872,) the cities of St. Anthony and Old Minneapolis were merged in a new corporation, each losing its identity. A cause of action against Old Minneapolis for personal injury, sustained in conse-

Adams v. City of Minneapolis.

quence of the negligence of said city, in suffering a sewer in a public street to remain open, without proper safe-guards, is preserved by sections 4 and 5, of sub-chapter 9, of said charter.

Such cause of action exists against, and may be prosecuted in an action against the present city of Minneapolis, against which judgment may properly be entered, in case of recovery.

The complaint in such action should, however, state facts, showing that the cause of action arose against the old city of Minneapolis, and from such showing, the liability of the present city of Minneapolis is inferable, as a conclusion of law.

The plaintiff in his complaint alleges that he suffered the injury, for which he seeks redress in this action, through the negligence of the defendant in leaving open and unguarded a sewer in one of its streets, on June 29, 1871. The defendant, the present city of Minneapolis, was incorporated February 28, 1872, and is composed of the old cities of Minneapolis and St. Anthony. The former constituting the west division, and the latter the east division of the present city. The complaint does not allege that the accident to the plaintiff occurred within the limits, or that it was occasioned by the negligence, of either of the old cities. This appeal is taken by defendant from an order overruling a demurrer to the complaint.

A. N. MERRICK, for Appellant.

COOLEY & LOWRY, for Respondent.

*By the Court.*—BERRY, J.—The present city of Minneapolis—the defendant—was formed by uniting the city of St. Anthony, and what may be called, by way of distinction, the old city of Minneapolis. This was not done by the simple annexation of either of the two latter cities to the other, but by the merger of the two in a new corporation. (See defendant's charter, *chap.* 10, *Sp. Laws*, 1872, *passim.*) If the case

had been one of simple annexation of the territory and inhab-
itants of the city of St. Anthony to the old city of Minneapo-
lis, the latter might have retained its identity as the city of
Minneapolis, notwithstanding the enlargement of its bound-
aries, and the increase of its population. But the effect of the
merger is, that the present city of Minneapolis has swallowed
up the old city of Minneapolis, so that the identity of the lat-
ter is lost, and it has ceased to exist.

By sections 4 and 5, sub-chap. 9, of defendant's charter, it
is, however, provided, that, " when the city council, (of the
present city of Minneapolis,) shall have organized, the functions
(*sic*) of the city council of the city of St. Anthony, and the
common council of the old city of Minneapolis, shall cease to
have or exercise any further powers.

" The act to incorporate the city of Minneapolis, approved
February 6, 1867, * * and the act to incorporate the city of
St. Anthony * * are repealed from and after the election and
qualification of the aldermen, (of the present city,) whose elec-
tion is herein provided for.   Notwithstanding the supersed-
ure or repeal, by this act, of the act incorporating the city of
St. Anthony, * * * and other acts affecting the interests of
the inhabitants of the city of Minneapolis, or any portion
thereof, it is not intended that any rights vested shall be lost
thereby ; but in all cases affecting past taxes, not yet collected,
liens for the same, rules of evidence, and rights of every kind,
inchoate or perfected, the provisions of such acts as are hereby
superseded or repealed, and of all ordinances passed by the
council of either of said cities, shall be deemed to continue in
force."

This action is brought against the present city of Minneap-
apolis, to recover damages for injuries to the person of the
plaintiff, claimed to have been sustained on or about the 29th
day of June, 1871, in consequence, as is alleged, of the negli-

gence of said. city, in suffering a sewer in a public street to remain open, without proper safeguards. But the incorporation and organization of defendant having occurred in 1872, as is shown by its charter, (which is declared to be a public act,) the complaint fails to show that the negligence and injury complained of occurred after the defendant came into existence, for which purpose the allegation of time is material. *Lockwood vs. Bigelow,* 11 *Minn.* 117. The *fact* is, as agreed by counsel, that the negligence, (if any,) was that of the old city of Minneapolis. For this negligence the plaintiff's right of action, (if any he had,) is undoubtedly preserved by *sections* 4 *and* 5, *supra.* But as the defendant is not identical with the old city of Minneapolis, and upon the face of the complaint does not, (for the reason given above,) appear to have been itself guilty of the negligence complained of, the complaint should, (if it is sought to charge the defendant,) state facts showing liability on the part of the old city of Minneapolis, from which the liability of the defendant, if the view which we take hereafter is correct, is to be inferred as a conclusion of law. For its failure to state such facts, the complaint fails to state a cause of action against defendant, and the demurrer should therefore have been sustained.

This conclusion would dispose of the present appeal; but as the complaint can, and doubtless will, be amended so as to remedy the defect pointed out, it is important to go further, and determine the vital question involved in the present controversy, and that to which the argument of counsel was principally directed. That question is, whether the plaintiff's right of action, (if any he had,) for the negligence of the old city of Minneapolis, exists against the present city of Minneapolis, the defendant.

By section 1, sub-chapter 1, of the defendant's charter, it is enacted, that the people inhabiting the territory of the

present city of Minneapolis, " shall be a municipal corporation, by the name of the ' city of Minneapolis,' and by that name shall sue and be sued, plead and be impleaded in any court, make and use a common seal, * * take and hold * * all such real, personal and mixed estates as the purposes of the corporation may require, * * * and shall have the general powers possessed by municipal corporations at common law, &c." By section 3, sub-chap. 4, (Id.) the city council is invested with the " management and control of the finances, and all the property of the city." The charter also contains provisions, by which the territory of St. Anthony is constituted the east division, and the territory of old Minneapolis the west division of the present city, and by which the rights and obligations of these divisions are regulated. These provisions do not, however, invest either of such divisions with any corporate character so that an action can be maintained against either of them.

Section 3, sub-chap. 6, of the charter provides, among other things, that, " all debts, liabilities and obligations of said city of Minneapolis, at the time of the enactment of this charter, * * shall, by such enactment, be assumed by said west division, and shall, together with the interest accrued or to accrue thereon, be provided for and paid by taxes raised within said west division exclusively, and by the appropriation to such purpose of all proceeds of the sale of any of the public property, *received* from the said city, which may be hereafter sold, and of all moneys or taxes of said city, heretofore raised or levied to pay such debts and obligations." Section 2 of the same sub-chapter makes the same provisions, *mutatis mutandis*, with reference to the city of St. Anthony, and the east division. And while section 3 provides that all public property, which, at the time of the enactment of the defendant's charter, shall belong to the city of Minneapolis,

shall belong to said west division exclusively, the further provisions that such property shall *be kept and disposed of* for its benefit, and . that " all moneys, taxes due, and choses, belonging to said city, shall be collected, kept and used for the benefit of said west division exclusively," when considered in connection with the fact that the municipal authority of the old city was at an end, and its officers superseded, go to show very clearly that the title to the property of the old city of Minneapolis, and its control and disposal, passed, together with the general administration of its affairs, to the defendant, though the property was to be managed for, and devoted to, the benefit of said old city. And the same remark is true with reference to the property of the city of St. Anthony. (See section 2.)

By section 2, sub-chap. 5, and sec. 4 of sub-chap. 6, of the defendant's charter, the city council of the present city of Minneapolis is empowered to levy the special taxes, the raising of which is provided for in sections 2 and 3, (just cited,) for the purpose of paying the debts, liabilities and obligations of said division. And in general, while by sections 4 and 5, sub-chap. 9, before cited, it is enacted that the supersedure and repeal of the charters of the old city of Minneapolis, and the city. of St. Anthony, shall not impair any " rights vested," or " rights inchoate or perfected," an examination of the charter at large will show that the intention and effect of the merger of Minneapolis and St. Anthony in the present city of Minneapolis, was to strip the two former of all municipal authority and machinery, and to invest the present city—the defendant—with sole and exclusive municipal authority over the territory and inhabitants thereof. The cities of old Minneapolis and St. Anthony ceased to exist. Their corporate organization was at an end. All of their officers were superseded. They could no longer sue or be sued, plead or be im-

pleaded, as cities or otherwise, nor was there any person upon whom service of legal process upon them, as cities or otherwise, could be made. In view of this state of facts, shown by the provisions of defendant's charter, it appears that the final result was to make the present city of Minneapolis—the defendant—not exactly the successor, perhaps, but certainly the representative, of the old city of Minneapolis; so that it—the defendant—was the proper party, and the only proper party, against which suits were to be brought upon such liabilities of the old city of Minneapolis as were preserved. *See Robbins vs. Sch. District*, 10 *Minn.* 340.

It is objected to this conclusion, that no judgment could be rendered in such an action against the defendant, because it is provided that all the liabilities of the old city of Minneapolis shall be assumed, provided for and paid by the west division exclusively. This is, however, only a regulation as between the present city and the east division on the one part, and said west division on the other. It does not concern the party, in whose favor the liability sought to be enforced, exists. The general authority conferred upon the defendant, to sue and be sued, plead and be impleaded, implies an authority to enter judgment againt the defendant, as the result of the legal proceedings thus authorized.

Our conclusion then is, that the plaintiff's right of action, (if any he had,) against the former city of Minneapolis, exists against, and may properly be prosecuted in an action against, the defendant.

But for the defect in the complaint before indicated, the order overruling the demurrer must be reversed.