[L. A. No. 5218. In Bank.—November 19, 1917.]

WILLIAM G. HENSHAW et al., Respondents, v. JOSEPH
FOSTER et al., as Members of and Constituting the
BOARD OF SUPERVISORS OF THE COUNTY OF
SAN DIEGO, and J. T. BUTLER, County Clerk of Said
County of San Diego, Appellants.

WATERS AND WATER RIGHTS—MUNICIPAL WATER DISTRICTS—CONSTITU-
TIONAL LAW.—Section 19 of article XI of the constitution contains
no constitutional inhibition against the legislation authorizing the
formation of municipal water districts, found in Statutes of 1911,
page 1290, and in the amended act, Statutes of 1911 (Extra Ses-
sion), page 92.

ID.—CONSTITUTIONAL LAW — INCLUSION OF MUNICIPAL CORPORATIONS
WITHIN WATER DISTRICTS.—By Statutes of 1911, page 1290, and the
amended act, Statutes of 1911 (Extra Session), page 92, authorizing
the formation of municipal water districts, power to acquire and
sell water is given to municipalities, larger in territory, and includ-
ing within themselves cities and towns or similar corporations, but
this is done, not in opposition to section 12 of article XI of the
constitution, but by general provisions, which vest in the corporate
authorities of the district the power to assess and collect special
taxes for the purposes contemplated.

ID.—CONSTITUTIONAL LAW — DELEGATION OF TAXING POWER.—The act
authorizing the formation of municipal water districts is not uncon
stitutional, as delegating to someone other than the corporate au-
thorities the power to assess and collect taxes for city and munici-
pal purposes, since the legislature does not delegate to the directors
control or supervision of any of the purely local affairs of the cities,
but by general law enables the inhabitants of a district including
cities to elect their own taxing board to raise the necessary funds
for district purposes.

APPEAL from a judgment of the Superior Court of San
Diego County. C. N. Andrews, Judge.

The facts are stated in the opinion of the court.

S. M. Marsh, District Attorney, and E. V. Winnek, for
Appellants.

Sweet, Stearns & Forward, for Respondents.

MELVIN, J.—Respondents, who are owners of land in the county of San Diego, brought this action to enjoin the board of supervisors of that county from calling an election for the purpose of determining whether or not a district to be known as the "San Diego Municipal Water District" should be incorporated under the provisions of an act entitled, "An act to provide for the incorporation and organization and management of municipal water districts, and to provide for the acquisition or construction by said districts of water works, and for the acquisition of all property necessary therefor, and also to provide for the distribution and sale of water by said districts," approved May 1, 1911, together with the amendment thereto approved December 24, 1911, and the further amendment thereto approved May 29, 1915, [Stats. 1915, p. 921]. A petition signed by the requisite number of qualified electors within the territory proposed as that of the contemplated district had been duly filed. The real property of the taxpaying plaintiffs is within this territory. The district, as outlined in the petition, includes lands not now within any municipality as well as the territory of three incorporated cities, San Diego, East San Diego, and La Mesa, and that of one irrigation district known as La Mesa, Lemon Grove and Spring Valley Irrigation District. The plaintiffs alleged in their pleading that by the calling and holding of the election certain of their constitutional rights would be violated. To their complaint a demurrer was interposed and was overruled by the court. The supervisors and county clerk refusing to plead further, judgment was accordingly entered. By it the plaintiffs were given the injunctive relief for which they had prayed. From said judgment this appeal is taken.

Respondents set forth in their complaint and here contend that the act of the legislature under which the petitioning electors proposed to organize the district was in violation of section 19 of article XI of the constitution of California. That section provides that "Any municipal corporation may establish and operate public works for supplying its inhabitants with light, water, power, heat, transportation, telephone service or other means of communication. . . . A municipal corporation may furnish such services to inhabitants outside its boundaries; *provided,* that it shall not furnish any service to the inhabitants of any other municipality owning or operating works supplying the same service to such inhabitants,

without the consent of such other municipality, expressed by ordinance." It is their contention that since the three cities mentioned above (each being vested with the power of furnishing its inhabitants with water) are included within the limits of the proposed district, there would be necessarily an intolerable clash of authority between the governing bodies of these municipalities and the trustees of the water district, if it should be established. In support of this contention they rely principally upon the declarations of this court in the opinion in *Petition of East Fruitvale Sanitary District Board*, 158 Cal. 453, [111 Pac. 368]. In that proceeding the court was considering the effect of the annexation of the territory of a sanitary district to a city, and it was held that the minor municipal corporation was merged in the major one and lost its identity. The language of the court upon which respondents place the greatest emphasis is as follows:

"It is a well-settled doctrine that 'there cannot be at the same time, within the same territory, two distinct municipal corporations exercising the same powers, jurisdiction and privileges.' (1 Dillon on Municipal Corporations, 4th ed., sec. 184; *King* v. *Pasmore*, 3 Term Rep. 199, 243; *Bloomfield* v. *Glen Ridge*, 54 N. J. Eq. 276, 283, [33 Atl. 925].)

"Accordingly, it is generally held that where one municipal corporation is annexed to another, the annexing city takes over the functions of the annexed municipality, and the latter by virtue of the annexation is extinguished and its property, powers, and duties are vested in the corporation of which it has become a part. (28 Cyc. 217; *Mt. Pleasant* v. *Beckwith*, 100 U. S. 514, 528, [25 L. Ed. 699]; *Adams* v. *Minneapolis*, 20 Minn. 484; *People* v. *Supervisors*, 94 N. Y. 263; *Stroud* v. *Stevens Point*, 37 Wis. 367; *Schriber* v. *Langlade*, 66 Wis. 616, [29 N. W. 547, 554].)

"If this be true where one of two municipal corporations having coextensive powers is annexed to another, the same result must follow *a fortiori* where a public corporation having powers more limited than those of a municipal corporation is annexed to a city which possesses all of the powers of the corporation which has been annexed to it and others in addition."

This declaration is by no means decisive of the problem presented by the appeal now before us. Indeed, it is of little value, for it is not, as is the complaint herein, based

upon constitutional grounds at all. In the next paragraph of the opinion the following language is used:

"These rules do not rest upon any theory of constitutional limitation. In the absence of any constitutional restriction, the legislature has absolute power over the organization, the dissolution, the extent, the powers, and the liabilities of municipal and other public corporations established as agencies of the state for purposes of local government. (*In re Madera Irr. Dist.*, 92 Cal. 296, [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 275, 675].) What shall be the effect of the enlargement or diminution of the boundaries of such corporations, or of the consolidation of two into one, or of the annexation of the territory of one into another, is a question to be answered by a determination of the legislative intent. The cases above cited declare the result of such action under laws which do not show affirmatively an intent to continue the existence of two separate public corporations within the same territorial limits." In the statute before us the legislative intent is declared in plain language.

The second section of the original act is as follows: "The people of any county or portion of a county, whether such portion includes unincorporated territory or not, in the state of California, may organize a municipal water district under the provisions of this act by proceeding as herein provided." (Stats. 1911, p. 1290.)

The corresponding section of the amending act approved December 24, 1911, is as follows: "The people of any city and county, or of one or more municipal corporations in any county with or without unincorporated territory in such county, in the state of California, may organize a municipal water district under the provisions of this act by proceeding as herein provided." (Stats. 1911, Ex. Sess., p. 92.)

In the case of *Pixley* v. *Saunders*, 168 Cal. 152, [141 Pac. 815], it was held that the inclusion of a part of a sanitary district within a subsequently incorporated town neither destroyed the autonomy of the district nor relieved the land within both municipalities from taxation by the properly constituted authorities of the district. While concededly both corporations had jurisdiction of matters of sanitation, it was held in that case that the legislature may provide for the formation of districts for the sanitation of territories which might not be adequately reached by means available to the

purely local jurisdiction of municipal corporations already existing within them. In that case the act under review did not as clearly as does this statute provide that any district formed thereunder might include other municipalities, but it did provide for the formation of a district in *any part of the state,* and in one of the sections relating to dissolution of sanitary districts reference was made to "any incorporated city or town that may be in occupation of a considerable portion of the territory of the district." Reasoning from these expressions this court concluded that it might "be fairly inferred that the legislature intended that sanitary districts might embrace both incorporated and unincorporated territory." In the case at bar the reason for a like conclusion with reference to municipal water districts is much stronger, because in the statute providing for their creation and operation we discover the legislative design of permitting the formation of districts for the convenient and economical development of a water supply within an area physically appropriate for such purpose without unduly restricting the powers of the inhabitants and their privileges by reason of the existence of smaller political entities situated within the greater tract and possessing powers somewhat similar to those secured for the corporation embracing the larger territory. The purpose is beneficent. By the law and under its sanctions the people of one or more municipalities, with the adjacent territory, may unite for the joint benefit of all forming a municipal corporation through which they may accomplish that which it would be impossible for any one of the constituent municipal or suburban units to perform. Unless grave constitutional reasons impel this court to the contrary, such an act will be upheld. (*In re Madera Irr. Dist.,* 92 Cal. 296–310, [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 675].) We do not discover that section 19 of article XI contains any constitutional inhibition upon such legislation.

We will next examine the contention of respondents that the statute in question is contrary to the provisions of the twelfth and thirteenth sections of article XI. Those sections are as follows:

"Section 12. The legislature shall have no power to impose taxes upon counties, cities, towns or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes,

but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes.

"Section 13.   The legislature shall not delegate to any special commission, private corporation, company, association or individual any power to make, control, appropriate, supervise or in any way interfere with any county, city, town or municipal improvement, money, property, or effects, whether held in trust or otherwise, or to levy taxes or assessments or perform any municipal function whatever, except that the legislature shall have power to provide for the supervision, regulation and conduct, in such manner as it may determine, of the affairs of irrigation districts, reclamation districts or drainage districts, organized or existing under any law of this state."

Respondents take the position that the act in question violates the above-quoted sections 12 and 13, because "it delegates to someone other than the corporate authorities the power to assess and collect taxes for city and municipal purposes." This argument, like the other objection discussed herein, is based in part upon the supposed exclusive authority conferred by section 19 of article XI upon cities. But, as we have seen, that article applies not merely to cities and towns, but to all municipal corporations, and power to acquire and sell water may be given to municipalities larger in territory and including within themselves cities and towns or similar corporations. This is done in the statute before us not in opposition to section 12, but by general provisions which vest in the corporate authorities of the district the power to assess and collect special taxes for the purposes contemplated. The corporate authority of such a district is the board of directors, and to that board is delegated the taxing power not in relation to matters of a purely local character in the included city or cities, but having reference to the affairs of the larger municipality embracing within it the others of lesser areas. In this view of the statute there is no violation of section 13, because the legislature does not delegate to the directors control or supervision of any of the purely local affairs of the cities, but by general law enables the inhabitants of a region, including cities, to form a district and to elect their own taxing board to raise the necessary funds for district purposes. As the court declared in the opinion in the Madera Irrigation District proceeding, the lia-

bility to the district of the inhabitants of an included town is similar to that of the same inhabitants for their proportion of the indebtedness of the county within which they reside.

The statute is also attacked in the complaint as being contrary to the provisions of the fourteenth amendment of the constitution of the United States and those of section 13 of article I of the constitution of California. It is argued that since no inhabitant of the proposed district has an opportunity, save by his vote, of declaring his unwillingness to come within its limits and under the authority of its officers, and since the board of supervisors, if the proper number of names are attached to the petition for the formation of the district, must· call the election, the result may be to deprive the citizen of property without any opportunity of being heard. Appellants concede that there is no provision for a hearing before a tribunal clothed with authority to act on the matter of the extent of the district and the exclusion of lands therefrom. The statute requires publication of notice containing the text of the petition, the boundaries of the proposed district and the date when the petition will be presented to the supervisors. But it is provided that ''When such petition is presented, the board of supervisors, shall give notice of an election to be held in said proposed water district for the purpose of determining whether or not the same shall be incorporated.'' Respondents assert that there is no provision for a hearing of the property owner's objections at any time, and *Brookes* v. *City of Oakland,* 160 Cal. 423, [117 Pac. 433], is cited as authority for declaring the act unconstitutional. That was a case in which this court was considering a statute giving to a city council power to create sewer districts within the city whenever, in the judgment of the council, such course should seem proper. Such a proceeding was one directly affecting private property. An important distinction is to be observed between a proceeding which has for its purpose the making of a local public improvement and one for the creation of a district having extensive powers. As Mr. Justice Shaw said, in delivering the opinion in *Wilcox* v. *Engebretsen,* 160 Cal. 288–293, [116 Pac. 750, 752] : ''Another distinction is to be made between the proceedings of a board or council acting in pursuance of some delegated legislative authority in creating or extending a political subdivision of the state, as a county or a city, a proceeding which

CLXXVI Cal.—33

does not directly affect private property, and proceedings to open, grade, regrade, or improve a street, which do directly charge or affect private property. (*People* v. *Ontario,* 148 Cal. 632, 634, [84 Pac. 205]; *People* v. *Loyalton,* 147 Cal. 779, [82 Pac. 620]; *Dean* v. *Davis,* 51 Cal. 412; *In re Madera Irr. Dist.,* 92 Cal. 323, [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 675].) The creation of a city and the annexation of territory thereto are matters delegated to the legislature, acting by means of general laws, by which some board or council is invested with authority in that behalf. If the statute provides that such proceeding may be begun by the filing of a petition with the particular board or council having the authority, the fact that such body acts upon a petition which does not appear bad upon its face, and proceeds thereon according to law, is usually held to be conclusive of the sufficiency of the petition against any collateral attack.'' It has been held that where no discretionary power is vested in any legislative body with regard to the boundaries of a territory proposed for annexation to a city, the act is not for that reason unconstitutional (*People* v. *Ontario,* 148 Cal. 627, [84 Pac. 205]); that in the formation of a town the finding of the supervisors that the petition is regularly signed by inhabitants of the proposed territory is conclusive (*People* v. *Loyalton,* 147 Cal. 774, [82 Pac. 620]); that a taxpayer may not restrain collection of a tax assessed against his land as a part of a levee district regularly formed after petition to the supervisors (*Dean* v. *Davis,* 51 Cal. 406); and that the organization of an irrigation district under the ''Wright Act'' does not violate the constitutional provision regarding ''due process.'' (*In re Madera Irr. Dist., supra.*) Respondents insist that we are here dealing with a matter directly affecting private property. They call attention to the fact that in *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112, [41 L. Ed. 369, 17 Sup. Ct. Rep. 56], the supreme court of the United States declared the necessity for a hearing ''at some time to those interested upon the question of fact whether or not the land of any owner which was intended to be included would be benefited by the irrigation proposed,'' and that the Wright Act was upheld upon the express declaration of the court that an appropriate hearing before the board of supervisors is in that act provided. Notwithstanding any expressions in the Fallbrook Irrigation case, we are committed to

the reasoning of the Madera District case, which was followed in *People* v. *Ontario* long after the decision in the other case had been made. In the opinion in the Madera District case the irrigation district was treated as a public corporation to be invested with certain political duties to be exercised in behalf of the state. That a water district such as the one sought to be established in San Diego County is also such a corporation may not be doubted under the authority of that decision. The statute in its scope is even broader than the Wright Irrigation Act and is quite as complex in its details as is that law. To classify a district created under its sanction with a sewer district such as that described in the Brookes case would be to disregard the distinction pointed out in *Wilcox* v. *Engebretsen*, 160 Cal. 288, [116 Pac. 750]. The following quotation from *In re Madera Irr. Dist.*, *supra*, seems to us to be conclusive upon the matter of the constitutionality of the statute:

"The constitutionality of the act in question is further assailed upon the ground that it makes no provision for a hearing from the owners of the land prior to the organization of the district. But the steps provided for the organization of the district are only for the creation of a public corporation to be invested with certain political duties which it is to exercise in behalf of the state. (*Dean* v. *Davis*, 51 Cal. 406.) It has never been held that the inhabitants of a district are entitled to notice and hearing upon a proposition to submit such question to a popular vote. In the absence of constitutional restriction, it would be competent for the legislature to create such public corporation, even against the will of the inhabitants. It has as much power to create the district in accordance with the will of a majority of such inhabitants. It must be observed that such proceeding does not affect the property of anyone within the district, and that he is not by virtue thereof deprived of any property. Such result does not arise until after delinquency on his part in the payment of an assessment that may be levied upon his property, and before that time he has opportunity to be heard as to the correctness of the valuation which is placed upon his property, and made the basis of his assessment. He does not, it is true, have any opportunity to be heard, otherwise than by his vote in determining the amount of bonds to be issued, or the rate of assessment with which they are to be paid;

but in this particular he is in the same condition as is the inhabitant of any municipal organization which incurs a bonded indebtedness, or levies a tax for its payment. His property is not taken from him without due process of law, if he is allowed a hearing at any time before the lien of the assessment thereon becomes final. (*People* v. *Smith,* 21 N. Y. 595; *Gilmore* v. *Hentig,* 33 Kan. 170, [5 Pac. 781]; *Hagar* v. *Reclamation Dist. No. 108,* 111 U. S. 701, [28 L. Ed. 569, 4 Sup. Ct. Rep. 663]; *Davies* v. *Los Angeles,* 86 Cal. 46, [24 Pac. 771].)"

Respondents also attack the petition and question the validity of the proceedings based thereon because of the inclusion within the boundaries of the proposed district of La Mesa, Lemon Grove and Spring Valley Irrigation District. This contention is sufficiently answered by the discussion of their objections based upon the fact that cities were also to be included within the boundaries of the district.

The demurrer to the complaint was erroneously overruled. Therefore, the judgment is reversed with instruction to the superior court to sustain the said demurrer.

Sloss, J., Shaw, J., Victor E. Shaw, J., *pro tem.,* Lawlor, J., and Angellotti, C. J., concurred.

Mr. Justice Henshaw, being disqualified, does not participate in the foregoing decision.