[S. F. No. 12888. In Bank.—August 3, 1928.]

CITY OF PASADENA (a Municipal Corporation), Petitioner, v. BESSIE CHAMBERLAIN, as City Clerk, etc., Respondent.

R. C. McAllaster, City Attorney, and J. H. Howard for Petitioner.

Ray L. Morrow for Respondent.

Nowland M. Reid, City Attorney of Long Beach, Edmund J. Callaway, Deputy City Attorney, and Harry F. Sewall, *Amici Curiae.*

RICHARDS, J.—This is a proceeding wherein the City of Pasadena, a municipal corporation, applies for a writ of mandate directed to the respondent, as the city clerk of said City, requiring her, in her official capacity, to certify to the passage and content of a certain ordinance, theretofore adopted by the city council of said City, and to transmit a certified copy thereof to the chief executive officer of each of the several municipalities referred to in said ordinance, in accordance with the terms thereof and of a certain act of the legislature, known and referred to herein as the "Metropolitan Water District Act," approved May 10, 1927. The respondent herein has appeared to said application and has presented and argued various objections to the validity of said ordinance and of said act. A number of *amici curiae* have also filed briefs herein which will be considered in the course of this opinion.

The Metropolitan Water District Act, adopted in 1927 (Stats. 1927, p. 694), is an act entitled: "An act to provide for the incorporation, government and management of metropolitan water districts, authorizing such districts to incur bonded debt and to acquire, construct, operate and manage

works and property, providing for the taxation of property therein and the performance of certain functions relating thereto by officers of counties, providing for the addition of area thereto and the exclusion of area therefrom and authorizing municipal corporations to aid and participate in the incorporation of such districts." The act in its body provides for the organization of so-called metropolitan water districts for the purpose of developing, storing and distributing water for domestic purposes, and which districts are to be formed of the territory included within the corporate boundary of any two or more municipalities, which need not be contiguous, and which districts are to be incorporated and organized and thereafter governed, maintained, and operated as in said act provided. Such districts when so incorporated are to be each a separate and independent political corporate entity. The act proceeds to provide that the method for the inception, organization and incorporation of such districts shall be as follows: The legislative body of any municipality desiring to take the initiative in the formation of such district may do so by the adoption of an ordinance, declaring that public convenience and necessity require the incorporation of a municipal water district and that the names of the municipalities proposed to be included within the said district are those specified in said ordinance, which shall also contain an estimate of the preliminary cost and expense of conducting the proceedings for the organization of such district and for the apportionment thereof among the municipalities proposed to be included therein. When the municipality initiating such proceeding has adopted such ordinance it shall be the duty of the clerk of the legislative body thereof to certify to the same and to transmit a certified copy thereof to the executive officer of each of the other municipalities designated therein and which other municipalities are required, within sixty days after the receipt of such certified copy of such ordinance, by the action of the legislative body thereof, to either approve or reject such ordinance without alteration or amendment. The failure of the legislative body of any such municipality to so act upon such ordinance within said period is to be deemed a rejection thereof. Within 120 days after the transmission of such ordinance and after the municipalities named therein have signified

by their action or nonaction their adoption or rejection thereof, the legislative body of the initiating city shall call a special election in all of the municipalities, the legislative bodies of which have approved such ordinance, at which election the proposition of the incorporation of such metropolitan water district shall be submitted to the electors residing within such municipalities for their adoption or rejection. The ordinance calling such election shall contain the details relating to the holding thereof in each of the several cities which have approved the original ordinance. Such election may be held concurrently with or may be consolidated with any primary or general election, in which event the precinct, polling places, and election officers of such primary or general election shall be the same for such special election. The majority of the electors voting affirmatively shall be sufficient to cause the adoption of the proposition and to organize and incorporate such water district by each of the respective cities whose electors shall vote thereon and to authorize the governing body of the initiating city to transmit to the secretary of state a certified copy of such proceedings up to and including the holding of such election, together with the result thereof. Within ten days after the receipt of such certificate the secretary of state shall issue a certificate of incorporation declaring such district duly incorporated, and shall transmit to each of the municipalities therein a copy of such certificate of incorporation; whereupon the incorporation of such metropolitan water district shall become effective from the date of the issuance of such certificate or certificates, and such district shall thereupon and thereafter become vested with all the rights, privileges and powers in said Metropolitan Water District Act provided. Section 5 of said act prescribes with much detail the powers with which such water district and the officers in charge thereof are to be invested, and, generally speaking, they are in substance the same powers with which public utility districts of various sorts have in the past by various legislative acts been invested. Particular reference to certain of those powers will hereinafter be made. The exercise of such powers is by the terms of said act to be entrusted to and performed by and through a board of directors, which shall consist of at least one representative from each municipality which has become,

for the purposes stated in said act, an integral part of such water district. In addition to the powers with which said district has, as heretofore stated, been invested, the act provides for the particular powers, and the method of their exercise, which the said board of directors shall possess in order to carry forward the purposes for which such district has been organized. It is not necessary to enumerate herein these powers, nor to set forth the detail of their exercise, and this for the reason that the concluding section of said act provides that "If any section, subsection, sentence, clause or phrase of this act is for any reason held to be unconstitutional, such decision shall not affect the validity of the remaining portion of said act." We are concerned in this decision with those questions only which arise upon the threshold of the formation of the particular metropolitan water district which has been initiated by the City of Pasadena and with those limited considerations which involve the constitutionality of the act itself as distinguished from the validity of the particular portions of said act and which are to be put to trial after the organization of the district and in the course of the conduct of its various operations as provided for in said act.

■ The first contention which the respondent makes, and in which she is joined by the several *amici curiae* who have appeared herein, is that the Metropolitan Water District Act is not a general law. This contention requires but brief consideration. The act purports to be a general law applicable to all portions of the state of California embracing municipalities which might desire to unite in a larger organization with the object of accomplishing a common purpose which it might not be possible or practical for such municipalities, acting singly or separately, to accomplish. The mere fact that the legislative act contemplated a course of action which might, under present conditions, be confined to municipalities of a particular region, does not militate against the validity of the act in question as a general law. The act does not by its terms attempt any classification, either of the municipalities which may take advantage of its provisions or of the area to which its operation might in the nature of things be confined; but, even had it done so, the act would be none the less a general law under the authority of our decision in the

case of *Wores* v. *Imperial Irr. Dist.*, 193 Cal. 609 [227 Pac. 181], and of the cases cited therein. ■ The respondent, however, insists that the act in question is not a general law for the reason that it confers powers and benefits upon those who reside within the corporate limits of municipalities, with special relation to the distribution of water for domestic uses, which are not conferred upon or made available under said act to those who reside or have their properties within unincorporated areas within the general territory affected by the organization of such metropolitan water district, but outside the municipalities which may elect to combine in the organization and for the purpose specified in said act. We are of the opinion, however, that there is no merit in this contention for the reason, if for none other, that the matter of the distribution of water for domestic uses in cities having compacted populations within limited areas is one which is very different in the detail of its operation and service from that which would be possible or practical in unincorporated areas occupied by a scattered as contrasted with a compacted population.

■ The next contention which the respondent and *amici curiae* urge against the validity of said act relates to the method provided therein for the initiation of the proceeding for the formation of metropolitan water districts. The respondent argues that to permit one municipality proposing to take the initiative in the formation of such water districts to impose upon other municipalities duties, or to invest such municipalities with powers in the course of the formation of such districts which are not within the scope of the duties and powers of such municipalities, as conferred upon them by the particular terms of their respective charters, would be invalid as in violation of article XI, section 6, of the constitution, which expressly delegates to chartered cities the right to make and enforce all laws and regulations in respect to their own municipal affairs. This contention raises the question as to whether the general purpose to be subserved by the organization of the metropolitan water district through the co-operation of several municipalities, as contemplated in the terms of said act, is or is not a municipal affair. It may be admitted that, generally speaking, the distribution of water within municipalities would be as to each of such munici-

palities a municipal affair, but it would be entirely too narrow an interpretation of the purposes and scope of the Metropolitan Water District Act to hold that, because the distribution of water for domestic use in each of a number of the municipalities within a designated area is a municipal affair, the formation of a common purpose for the acquisition of water in large quantities from sources outside of such municipalities, and even outside of the area within which they exist, and the distribution of such water, when so acquired, among such cities, in accordance with a common plan, and with a view to achieving equitability in the distribution and use of such water, would in any sense be, as to each or any of such combined municipalities, a municipal affair. The impossibility or impracticability of any one or more of such municipalities acting separately and independently in the acquisition and distribution of such water would seem to argue conclusively that in achieving such object by the means provided for in said act the municipalities engaged therein could not be held to be engaged in the conduct of a merely municipal affair. The language used by this court in deciding a similar question in the case of *Pixley* v. *Saunders,* 168 Cal. 152 [141 Pac. 815], would seem to have exact application to this phase of the present proceeding: "The condition above described leads inevitably to the conclusion that while generally the question of sanitation is a municipal affair, in many instances it is one of broader scope, which cannot be adequately handled by the municipal authorities of a single town. Therefore, it cannot be said to be a 'local' or 'municipal affair' within the inhibition of sections 12 and 13 of article XI of the constitution, above quoted, and it falls within the class of public purposes such as irrigation and reclamation, for which the legislature has undoubted authority to provide governmental agencies or districts by general laws." If, therefore, we are correct in the conclusion that the Metropolitan Water District Act is a general law, and if we are also correct in holding in accord with the foregoing authority, that the general purpose proposed to be accomplished by said act takes it beyond the narrow scope of dealing with a merely municipal affair, it follows irresistibly that the legislature under the express provisions of section 6 of article XI of the state constitution had full

power by the passage of said act to impose duties and impress powers upon municipalities other than those provided for in their charters for the purpose of accomplishing the objects contemplated by such legislative act. The objection that the legislature had no authority to invest one municipality with the power of initiating the proceedings which were expected to result in the formation of a metropolitan water district through the favorable action of other municipalities has not even the merit of novelty, since the state legislature has with increasing frequency in recent years in the proposed formation of irrigation districts, drainage districts, sanitary districts, water districts, and like governmental agencies adopted the plan of investing a few individuals with the power of taking the initiatory steps looking to the formation of such districts affecting wide areas and large numbers or varied groups of individuals, and its action in so doing has been generally upheld.

The contention of the respondent that the act under review is unconstitutional for the reason that the persons who are ultimately to be affected thereby are given no voice in the formation of such district is answered by the terms of the act itself; for, while it is provided therein that a single municipality may set in motion the proceedings for the formation of such water district, the act itself provides that after the initial action is taken, the question of whether or not the residents and electors of each and all of the municipalities within the proposed area shall approve or disapprove the action thus taken is to be committed in each separate municipality to a special election, and as to each the act is not to be further operative until a majority of the electors shall at such special election approve the initiatory proceedings which have thus far been taken.

We have thus disposed of the several questions which arise upon the threshold of the proceedings which have thus far been taken looking to the formation of the metropolitan water district in question, and we, therefore, come to the main objection which is urged by the respondent and also by the several *amici curiae* against the validity of said legislative act and of the proceedings which have thus far been initiated thereunder. This objection is that under the terms of said act the necessary cost and expenditures incident to the functioning of said metropolitan water district

in a way of acquiring large quantities of water from outside sources and of providing for the distribution thereof for domestic uses among the inhabitants of the various municipalities which may elect to come within the terms and be bound by the burdens and be the recipients of the benefits of said act and of the incorporation of said water district thereunder are to be imposed in the form of taxes upon the people of these several municipalities, and are in the nature of assessments to be levied and collected upon their individual properties for benefits conferred that the imposition of such assessments without an opportunity on the part of the property owners to be heard upon the question as to whether the burden of such assessment shall be imposed, or as to whether it is their desire that their property should receive the benefits which are to follow the imposition of such burdens, renders the entire act unconstitutional and void as contrary to the provisions of both the state and the federal constitution which relate to due process of law. This contention presents precisely the same question which was presented to this court in several recent cases. (*Henshaw* v. *Foster*, 176 Cal. 507 [169 Pac. 82]; *Miller & Lux* v. *Board of Supervisors*, 189 Cal. 255 [208 Pac. 304]; *In re Orosi Public Utility District*, 196 Cal. 43 [235 Pac. 1004].) An examination of these cases will serve to show that the former distinction sought to be drawn between what are governmental and what are proprietary powers to be exercised by the public corporations, in so far as the maintenance of these by general taxation is concerned, is fast fading out of our jurisprudence. The most recent case, above cited, aptly expresses this tendency, wherein it says: "We take it to be now a generally accepted proposition that, while a municipality, which undertakes to supply those of its inhabitants who will pay therefor with utilities and facilities of urban life, is performing a function not governmental, but more often committed to private corporations with whom it may come into competition, it is, in fact, engaging in business upon municipal capital, and for municipal purposes." The question presented in that case arose out of the formation of a public utility district under the provisions of the act of the legislature relating to that subject adopted in 1921. (Stats. 1921, p. 906.) Under the terms of said act public utility districts were permitted to be created in un-

incorporated territory having for their purpose that of supplying the inhabitants of the proposed district with light, water, power, heat, and sanitation. It was with reference to such purposes that the language of the court above quoted was employed, and in its use the court indicated that whether such district was to be organized for the purpose of carrying out all or any of the foregoing purposes would be immaterial in determining whether or not the particular purpose to be subserved in the formation of such district was in the nature of a governmental purpose having for its end that of extending to the inhabitants within the area of the district to be formed the use and benefit of certain utilities which they might not be able to attain in any other way, and which from common experience we know would tend to promote the general welfare of the people within such area. The supplying of water for domestic uses within municipalities has grown of recent years to be one of the most common and well-recognized forms of municipal activities wherein public property is employed and wherein public taxation is imposed and collected upon inhabitants of the municipalities regardless of benefits conferred upon particular property, and by the same method by which taxes are generally levied and collected for the carrying on of the governmental functions of incorporated cities and towns. Municipal corporations, whether organized under special charters or general laws, derive these particular powers from the same legal sources as those which provide for the organization of *quasi*-municipal corporations such as that provided for in this act, and we can perceive no real distinction between the organization of a municipal corporation, strictly so called, for the carrying forth of the purposes usually committed to such governmental agencies and the organization under legislative sanction of such other governmental agencies as municipal water districts or public utility districts or metropolitan water districts, which, while these may not exercise all of the functions committed to municipal corporations, strictly so called, are empowered to exercise certain of these functions which have come to be recognized as at least *quasi*-governmental in character. Nor can we perceive any substantial reason why such district when so organized may not be invested with the same powers in the matter of the levying

and collection of taxes for the carrying forth of its limited purposes with which municipal corporations are invested for the carrying forth of similar, though more diversified purposes. Nor can we discover any rational theory upon which in the levy and collection of such taxes the powers of either should be limited by those rules which have been given application in the formation of that class of public agencies wherein the assessments imposed upon a particular property have such direct reference to benefits conferred as to require notice and opportunity for hearing to be given to the owners of the property to be affected by the assessments thus to be imposed. The decision last above cited expressly holds that any tax levied and imposed for the purpose of supplying capital for the foregoing municipal or *quasi*-municipal purposes is not to be regarded as "a tax or assessment on property directly benefited by the construction of some local improvement, but is a general tax levied just as, and for the same purpose that any general municipal tax is imposed for carrying on the governmental functions and utilitarian objects of duly incorporated cities or towns." We are constrained, therefore, to the conclusion that the legislature in investing metropolitan water districts to be formed under the provisions of the act in question with power, through their properly appointed officials, to collect general taxes within the municipalities uniting in the formation of such districts for the common purpose of supplying each with water for domestic uses has not acted in violation of any of the provisions of the state constitution to which our attention has been directed.

It is the further contention of the respondent, however, that even if it be conceded that the metropolitan water districts to be formed under said act have been properly invested with power to impose taxes upon the property of the inhabitants of the municipalities uniting in such formation and in the manner provided for in said legislation, the act is still unconstitutional as an attempt to unlawfully delegate the power of taxation to a special commission under the provisions of section 13 of article XI of the constitution, which reads as follows: "The legislature shall not delegate to any special commission, private corporation, company, association or individual any power . . . to levy taxes or assessments, or perform any municipal function whatever,

except that the legislature shall have power to provide for the supervision, regulation and conduct, in such manner as it may determine, of the affairs of irrigation districts, reclamation districts or drainage districts, organized or existing under any law of this state.'' The difficulty with the foregoing contention as to the application of the above constitutional provision to the situation presented in the instant proceeding consists in the fact that the official body or board of directors to whom the management and control of municipal water districts has by the terms of said act been entrusted and which is to exercise the powers and perform functions of the governmental agency thus to be created does not come within any of the designations of commissions, corporations, companies, associations, or individuals to which the inhibition of the foregoing section of the constitution applies. On the other hand, the governing body or board of directors of metropolitan water districts are in the same sense the governing officials thereof as are the city council or boards of trustees of municipalities or of such other governmental agencies as have heretofore been invested with powers and duties of a *quasi*-municipal character. This question was fully disposed of by this court in the case of *Henshaw* v. *Foster*, 176 Cal. 507 [169 Pac. 82], wherein in interpreting the Municipal Water District Act approved May 1, 1911, together with the amendments thereto, approved May 29, 1915 (Stats. 1915, p. 921), containing similar provisions and against the validity of which a similar contention was made, this court said: ''Respondents take the position that the act in question violates the above-quoted sections 12 and 13 [art. XI] because it delegates to someone other than the corporate authorities the power to assess and collect taxes for city and municipal purposes. This argument, like the other objection discussed herein, is based in part upon the supposed exclusive authority conferred by section 19 of article XI upon cities. But, as we have seen, that article applies not merely to cities and towns, but to all municipal corporations, and power to acquire and sell water may be given to municipalities larger in territory and including within themselves cities and towns or similar corporations. This is done in the statute before us not in opposition to section 12, but by general provisions which vest in the corporate authorities of the district the

power to assess and collect special taxes for the purposes contemplated. The corporate authority of such a district is the board of directors, and to that board is delegated the taxing power not in relation to matters of a purely local character in the included city or cities, but having reference to the affairs of the larger municipality embracing within it the others of lesser areas. In this view of the statute there is no violation of section 13, because the legislature does not delegate to the directors control or supervision of any of the purely local affairs of the cities, but by general law enables the inhabitants of a region, including cities, to form a district and to elect their own taxing board to raise the necessary funds for district purposes.'' A similar question was before this court in the case of *Doyle* v. *Jordan*, 200 Cal. 170 [252 Pac. 577], and in which the foregoing language from *Henshaw* v. *Foster, supra,* was fully approved. We are, therefore, of the opinion that there is no merit in the respondent's foregoing contention.

Various other propositions have been urged by the respondent and more particularly by *amici curiae* in their somewhat elaborate briefs, but we are of the opinion that these are practically all covered by the matters considered and decided in the foregoing opinion. Whatever questions may arise as to the validity of particular provisions of the Metropolitan Water District Act other than those herein expressly considered will come into view in the course of the administration of the affairs of this particular metropolitan water district after it shall have reached the stage of incorporation, and entered upon the administration of its diversified functions as a corporate body. It is not necessary to anticipate these questions in this preliminary stage of its proposed incorporation.

Let the writ issue as prayed for.

Waste, C. J., Seawell, J., Shenk, J., Curtis, J., and Langdon, J., concurred.