[S. F. No. 13361. In Bank.—November 3, 1930.]

ANGUS MORRISON et Ux., Appellants, v. SMITH BROS., INC. (a Corporation), et al., Defendants; EAST BAY MUNICIPAL UTILITY DISTRICT, Respondent.

[S. F. No. 13362. In Bank.—November 3, 1930.]

METHYL A. LARSON et al., Appellants, v. SMITH BROS., INC. (a Corporation), et al., Defendants; EAST BAY MUNICIPAL UTILITY DISTRICT, Respondent.

[S. F. No. 13169. In Bank.—November 3, 1930.]

ANNA B. ANDERSON et al., Appellants, v. SMITH BROS., INC. (a Corporation), et al., Defendants; EAST BAY MUNICIPAL UTILITY DISTRICT, Respondent.

[S. F. No. 13170. In Bank.—November 3, 1930.]

LEONA HALL et al., Appellants, v. SMITH BROS., INC. (a Corporation), et al., Defendants; EAST BAY MUNICIPAL UTILITY DISTRICT, Respondent.

L. R. Weinmann, W. E. Licking, Fred S. Herrington, Frank W. Hooper and Donald McClure for Appellants.

Everett J. Brown, Thomas J. Ledwich, T. P. Wittschen and John B. Rosson for Respondent.

Butcher & Haines, Maxwell Nichols, Robertson & Crawford, Heaney, Price & Postel and Harold A. Parma, *Amici Curiae*.

WASTE, C. J.—These several actions were commenced to recover damages for the alleged wrongful death of certain named persons. Briefly, and in substance, the complaints allege that the defendant district, organized under and pursuant to the provisions of the Municipal Utility District Act (Stats. 1921, p. 245), and while acting within the scope of the powers therein conferred, had adopted and entered into a project known as the ''Mokelumne River Project'' as a part of its plan for the conveyance, sale and distribution of water to the inhabitants of the district;

that in furtherance of said project it had entered into a contract with its co-defendant, Smith Bros., Inc., for the construction of a certain tunnel and settling basin or diversion chamber; and that by reason of the negligence of said defendants the waters of San Pablo Creek flowed into and through said tunnel and connected workings, causing the death by drowning of four named persons. The defendant district demurred generally to the several complaints, and the court below sustained each demurrer without leave to amend. From the judgment of dismissal thereafter entered in favor of the district the respective plaintiffs appealed to this court. The causes have since been consolidated.

In sustaining the demurrers, the trial court concluded that a district formed under the provisions of the above-entitled act was not answerable in damages for the negligence of its officers and agents. The appellants contend, in effect, that the court erred in so concluding, inasmuch as districts formed under said act are municipal or *"quasi-municipal"* corporations enjoying many of the rights and privileges of cities and whose duties and liabilities should therefore be measured by the same standard; in other words, that the respondent district, like a municipality, is liable to suit when injury results from the negligence of its officers or agents exercising powers in reference to matters not purely governmental but of a proprietary character. Respondent, on the other hand, urges that it is to be dealt with as an agency of the state, that is, as a separate and distinct governmental entity whose purposes, activities and functions are necessarily public or governmental in character. Respondent concedes that incorporated cities and towns have been held liable in tort and have been held to be acting in a proprietary character when engaged in activities similar to those designated by the statute under which it was formed, but argues that this does not in any sense make the same activities proprietary when engaged in by a corporation such as it declares itself to be.

The Municipal Utility District Act, *supra,* among other things, provides that any municipal utility district formed thereunder shall have power to have perpetual succession, to sue and be sued, except as otherwise provided therein or by law; to adopt and alter a seal; to acquire, hold, and dispose of real and personal property necessary to the full

and continued exercise of its powers; to acquire, construct, own, operate, control or. use works for supplying the inhabitants of the district with light, water, power, heat, transportation, telephone service, or other means of communication, or means for the disposition of garbage, sewage or refuse matter, and to do all things necessary or convenient to the full exercise of the powers granted by the act. It is given power, when there is a surplus of water, light, heat or power above that required by the inhabitants of the district, to dispose of the surplus outside the district to any purchaser. It also may exercise the right of eminent domain for the condemnation of private property for public use, and may construct its works across or along any street or highway, or over the lands and property of the state. It may borrow money and issue bonds or other evidence of indebtedness within certain limitations, levy and collect, or cause to be levied and collected, taxes for the purpose of carrying on its operations and paying its obligations, and may make contracts, employ labor, and do all acts necessary or convenient for the full exercise of the powers granted to it, which are to be exercised by a board of directors elected by the voters in the district.

█ The tort liability of such a corporation has never been determined by the appellate courts of this state. Such a corporation is clearly a public corporation within the meaning of section 284 of the Civil Code. Within the general class of public corporations, this court has already distinguished between two different species of such corporations, as far as liability for tort is concerned. █ On the one hand there are incorporated cities and towns, usually referred to as municipal corporations. In reference to this type of public corporation the rule is well settled that their liability for tort depends on the nature of the work being done at the time the tort is committed. If the agents were acting in a governmental capacity no liability attaches to the corporation, under the elementary rule that the state or its various subdivisions are not liable for the torts of their agents while acting in a governmental capacity. But it is equally well settled that an incorporated city or town is liable for the torts of its agents committed while acting in a proprietary capacity. (*Chafor* v. *Long Beach,* 174 Cal. 478, 484 [Ann. Cas. 1918D, 106, L. R. A. 1917E, 685, 163

Pac. 670]; *Davoust* v. *Alameda*, 149 Cal. 69, 70 [9 Ann. Cas. 847, 5 L. R. A. (N. S.) 536, 84 Pac. 760].) This type of public corporation will be referred to in this opinion as a municipal corporation proper.

The other type of public corporation upon whose tort liability this court has already passed is typified by irrigation, reclamation or drainage organizations, whose main purpose is to assist the state in reclaiming, improving and aiding the productivity of farm lands. In reference to this type of organization the law is well settled that, subject to certain exceptions not important in this case, they are not liable for the torts of their agents, upon the theory that they are state agencies, performing a governmental function. (*Whiteman* v. *Anderson-Cottonwood Irr. Dist.*, 60 Cal. App. 234, 236 [212 Pac. 706]; *Nissen* v. *Cordua Irr. Dist.*, 204 Cal. 542 [269 Pac. 171].) It is somewhat difficult to determine the exact nature of this type of organization, due to some rather loose language used in describing them. In the leading case of *In re Madera Irr. Dist.*, 92 Cal. 296, 318 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac.̇ 272, 675], such organizations were referred to as "public corporations" for "governmental purposes", and, at page 317, as "the agents or representatives of the state in the particular locality in which they exist". In *Nissen* v. *Cordua Irr. Dist.*, *supra*, at page 545, and in *Lindsay-Strathmore Irr. Dist.* v. *Superior Court*, 182 Cal. 315, 335 [187 Pac. 1056], they are referred to as "public agencies". In *Jenison* v. *Redfield*, 149 Cal. 500, 501 [87 Pac. 62], they are called "public corporations". In *Turlock Irr. Dist.* v. *White*, 186 Cal. 183, 187 [17 A. L. R. 72, 198 Pac. 1060], it was said "that such a corporation is not a municipal corporation, but a public corporation for municipal purposes". In *People* v. *Reclamation Dist.*, 117 Cal. 114, 120 [48 Pac. 1016], it was said that "if these districts can be said to be corporations at all, I think they are properly called public corporations for municipal purposes. That phrase means no more than that they are state organizations for state purposes". In *Whiteman* v. *Anderson-Cottonwood Irr. Dist.*, *supra*, at page 237, it is said: "As to the character of irrigation districts as organized under our statute, it must be conceded that they are public corporations or public agencies, but not 'municipal corporations'

as that term is usually understood." And in *Western Assur. Co.* v. *Sacramento etc. Drainage Dist.*, 72 Cal. App. 68, 76 [237 Pac. 59], they are referred to as "governmental agencies of the state". For the purposes of this opinion such organizations will be referred to as state agencies.

Organizations of the nature of respondent are of relatively recent origin in this state. They will be referred to in this opinion as *quasi*-municipal corporations. In 1911, article XI, section 19, of the Constitution was amended to read, in part, as follows: "Any municipal corporation may establish and operate public works for supplying its inhabitants with light, water, power, heat, transportation, telephone service or other means of communication . . . " That the term "municipal corporation", as above used, was not intended to be limited to municipal corporations proper, as defined in this opinion, but was intended to include *quasi*-municipal corporations similar to respondent, is well settled. Immediately after the adoption of the above constitutional provision the legislature amended the Municipal Water District Act of 1911 (Stats. 1911, p. 1290, as amended Stats. 1911, Ex. Sess., p. 92), which permitted the creation of districts similar in many respects to respondent. In the case of *Henshaw* v. *Foster*, 176 Cal. 507 [169 Pac. 82], the constitutionality of this act was attacked. At page 511 this court said: "By the law and under its sanctions the people of one or more municipalities, with the adjacent territory, may unite for the joint benefit of all *forming a municipal corporation*, through which they may accomplish that which it would be impossible for any one of the constituent municipal or suburban units to perform. . . .

"Respondents take the position that the act in question violates the above-quoted sections 12 and 13, because 'it delegates to someone other than the corporate authorities the power to assess and collect taxes for city and municipal purposes'. This argument, like the other objection discussed herein, is based in part upon the supposed exclusive authority conferred by section 19 of article XI upon cities. But, as we have seen, *that article applies not merely to cities and towns, but to all municipal corporations*, and power to acquire and sell water may be given to municipalities larger in territory and including within themselves cities and towns or similar corporations." (Italics added.)

Thus, from the very first, the courts have recognized that the above constitutional provision has created a new type of public corporation very similar to municipal corporations proper, but radically different from the state agencies above discussed.

The next step in the development of this new type of municipal corporation came with the passage of the County Water District Act of 1913. (Stats. 1913, p. 1049.) This act was closely patterned on the Water District Act of 1911, except that it applied to unincorporated territory. In 1921 the legislature, which had hitherto limited the new type of municipal corporation to water districts, decided to extend the same to the operation of other utilities. As a result there was passed the Public Utility District Act (Stats. 1921, p. 906), and also the Municipal Utility District Act (Stats. 1921, p. 245), the two acts being similar in nature, except that the former applies only to unincorporated territory, while the latter has application to incorporated territory alone or in combination with unincorporated territory. It is under the latter act that respondent is incorporated. These two acts were closely patterned on the 1911 act above mentioned. In the case of *In re Orosi Public Utility Dist.*, 196 Cal. 43 [235 Pac. 1004, 1009], a case strongly relied on by both parties, at page 56, it is said: "It is significant that, when the legislature came to pass the act extending to the inhabitants outside of incorporated cities and towns the privileges in regard to the acquisition and use of their own public utilities that are granted by the state Constitution to municipalities, it should have followed so closely the language of the constitutional amendment of 1911 in the statement of the purposes for which the districts may be created. *We are convinced that it was its intention to provide for the creation of public corporations of a quasi-municipal character, with power to carry on the particular functions committed to them.*" (Italics added.) The court in that case clearly and unequivocally held that such *quasi*-municipal corporations differ from state agencies as above defined, and are similar to municipal corporations proper. At page 52 the court thus distinguishes between state agencies and *quasi*-municipal corporations: "The purposes for which the Orosi District was formed, the appellant contends, are not municipal, and

a district formed for such purposes does not possess the essential characteristics of a municipal corporation. If the authorities cited by him were strictly in point, there would be an end to the controversy, but they are not. They deal with questions arising in connection with districts formed for the purpose of draining, irrigating, reclaiming, or otherwise directly benefiting the lands affected thereby. (Citing cases.) When related to that class of districts, the cases cited are clearly in point. The improvements contemplated by the acts under which they were formed cannot be considered 'municipal purposes'. . . . One of the distinguishing features of such districts is that they are created for the purpose, generally, of some special local improvement, and may exercise only such powers as may be conferred by the legislature in the line of the object of their creation. They are merely special state organizations for state purposes, created to perform certain work which the policy of the state requires or permits to be done, and to which the state has given a certain degree of discretion in making the improvements contemplated. The other distinguishing feature is that the exactions which such districts may enforce in order to carry out their purposes are in the nature of assessments or taxes for local benefits, to be spread on the property in the districts in proportion to the peculiar advantage accruing to each parcel from the improvement. . . .

"Districts of the nature just discussed are not municipal corporations in the contemplation of the Constitution."

The final act in the development of this new type of *quasi*-municipal corporation came in 1927 with the passage of the Metropolitan Water District Act (Stats. 1927, p. 694), an act closely patterned on the other acts herein mentioned, and permitting the creation of a district which, for all practical purposes, is the same as respondent district. In the case of *Pasadena* v. *Chamberlain,* 204 Cal. 653 [269 Pac. 630], it was directly held that such a district, for all practical purposes, was a municipal corporation. At page 663 it is said: "Municipal corporations, whether organized under special charters or general laws, derive these particular powers from the same legal sources as those which provide for the organization of *quasi* municipal corporations such as that provided for in this act, and we can perceive

44

no real distinction between the organization of a municipal corporation, strictly so-called, for the carrying forth of the purposes usually committed to such governmental agencies, and the organization under legislative sanction of such other governmental agencies as municipal water districts, or public utility districts or metropolitan water districts, which, while these may not exercise all of the functions committed to municipal corporations, strictly so-called, are empowered to exercise certain of these functions which have come to be recognized as at least *quasi*-governmental in character.''

Thus, from 1911 to date, there has been developed a new type of public corporation, resembling in many respects municipal corporations proper, and radically different in nature from irrigation and reclamation districts. The case of *Henshaw* v. *Foster, supra,* clearly recognized the distinction, holding that such *quasi*-municipal corporations were municipal corporations within the meaning of article XI, section 19, of the state Constitution. Unless the court had so found a distinction it could not have upheld the delegation to a board of directors of the general taxing power. In the Orosi case, *supra,* the court again found a distinction between irrigation districts and *quasi*-municipal corporations. The court there pointed out that the purposes and means of operation are different. It stated that these *quasi*-municipal corporations pay their way, first, out of charges for services supplied, and, second, out of taxation by general assessment in the same manner as municipal corporations proper. State agencies, on the other hand, assess their costs according to the benefits conferred upon the individual property affected. In the Chamberlain case, *supra,* the close similarity to municipal corporations proper of this new type of organizations was emphasized.

We feel that sufficient has been said to show that such *quasi*-municipal corporations as respondent more closely resemble municipal corporations proper than they do state agencies, such as irrigation and reclamation districts. Under such circumstances we deem the better rule to be that, so far as tort liability is concerned, such liability is to be governed by the same rules as are applicable to municipal corporations proper. No good reason occurs to us why those districts should be cloaked with .the immunity

that respondent claims when acting in a purely proprietary capacity; and, in fact, many reasons exist why the same rule that applies to municipal corporations proper should apply to respondent. It would certainly be an anomalous situation if a municipality engaged in a proprietary function, such as running, operating or constructing waterworks, would be liable for the torts of its agents, but if that same municipality should join with other municipalities and organize a municipal utility district it would thereby immunize itself from all such liability. Such a rule does not appeal to our sense of justice nor to our reason. The rule excluding state agencies from liability for tort is an exception to the general rule which we are not inclined to extend. In so far as liability for tort is concerned, the respondent district is to be governed by the same rules as govern municipal corporations with reference to the same question—that is, respondent is liable for the torts of its agents if said torts are committed while the agents are acting in a proprietary capacity. It therefore follows that the trial court was in error in sustaining the general demurrers without leave to amend. Whatever defects may appear in the complaints may easily be corrected by amendment.

For the foregoing reasons the judgments of the trial court are reversed.

Preston, J., Shenk, J., Richards, J., Seawell, J., Curtis, J., and Langdon, J., concurred.

Rehearing denied.