[No. F023727. Fifth Dist. Dec. 11, 1995.]

HOWARD JARVIS TAXPAYERS' ASSOCIATION et al., Plaintiffs and Respondents, v.
FRESNO METROPOLITAN PROJECTS AUTHORITY, Defendant and Appellant.

COUNSEL

Livingston & Mattesich, Gene Livingston, Rebecca M. Ceniceros, Crosby, Heafey, Roach & May, Peter W. Davis, Kathy M. Banke, Baker, Manock & Jensen, John H. Baker and Joseph M. Marchini for Defendant and Appellant.

Jonathan M. Coupal and Trevor A. Grimm for Plaintiffs and Respondents.

OPINION

**ARDAIZ, P. J.**—This case presents the issue of whether the retail transactions and use tax of one-tenth of 1 percent (popularly known as the "Arts to Zoo" tax) authorized by the Fresno Metropolitan Projects Act (Gov. Code, § 68056 et seq.) violates article XI, section 11, subdivision (a) of the California Constitution. The constitutional provision states: "The Legislature may not delegate to a private person or body power to make, control, appropriate, supervise or interfere with county or municipal corporation improvements, money or property, or to levy taxes or assessments, or perform municipal functions."

The matter before us presents the inherent tension in the symbiotic relationship of the role of government, the democratically expressed will of the people, and the constraints of the California Constitution. We initially observe that neither government nor the people operate free from the strictures of our Constitution. In other words, sometimes the majority cannot impose its view because the Constitution restrains that action. This is because the Constitution is the ultimate social and legal contract. It allows the majority to promote its view so long as it does not interfere with the constitutional provisions guaranteed to the minority. Thus, the Constitution expresses a larger policy view that sometimes interferes with an immediate goal of the then majority.

Likewise, the Constitution expresses the power of the Legislature. Therefore, it sometimes permits and sometimes restricts the power of the Legislature.

In effect, a constitutional challenge to a law or an act of the Legislature or the people does not challenge the intentions of the participants as good or bad. It does not challenge the motives and goals of the Legislature as good or bad. It simply challenges whether the power exists under the Constitution to do that which was done or is proposed to be done.

Before us is an act of the Legislature designed and clearly intended to provide a cultural benefit to the community of Fresno. It was done at the behest of members of the community and ratified by a majority of the community. Proponents refer to it as a pure "act of Jeffersonian democracy." However, our role is not to question or determine whether the implementation of the act would or would not be for the greater good or whether it is favored by the majority. Here, like the trial court, we are called upon to address a narrow question: whether the instant tax is violative of California Constitution, article XI, section 11, subdivision (a). The superior court held that the Legislature had unlawfully delegated to a private body (the Fresno Metropolitan Projects Authority) the power to levy the tax, and that the tax was therefore unconstitutional. For reasons we shall explain in this opinion, we agree and will affirm the judgment.

## APPELLANT'S CONTENTIONS

Appellant Fresno Metropolitan Projects Authority (the Authority) contends that California Constitution, article XI, section 11 is not violated because (1) the Authority did not levy the tax; rather, the voters within the geographical boundaries of the Authority decided to "levy a tax upon themselves"; (2) even if the Authority levied the tax, the Authority is not a "private person or body"; and (3) the constitutional provision cannot be violated because the tax "is a regional undertaking" and "does not concern the strictly local affairs of any one municipality." As we shall explain, we find none of these arguments to be persuasive.

Because this case involves a constitutional challenge to a provision of the Fresno Metropolitan Projects Act, we begin with a brief overview of that act. We will then briefly review the pertinent procedural history of this case. Then we will provide an overview of article XI, section 11, of the California Constitution. Finally, we will explain why we agree with the superior court's ruling that the tax in question violates article XI, section 11, subdivision (a), and why we reject each of appellant Authority's three contentions of error.

## THE FRESNO METROPOLITAN PROJECTS ACT

In 1992 the California Legislature enacted Senate Bill No. 1598, the Fresno Metropolitan Projects Act (Gov. Code, § 68056 et seq). The Legislature declared that "[p]rojects to improve the quality of life, including scientific, cultural, and multicultural facilities and programs, are essential in providing a rich source of knowledge and inspiration to all of the residents of the Fresno metropolitan area and of the state." (Gov. Code, § 68056, subd. (a).) The Legislature further declared that "[t]he preservation and development of those facilities and programs are vital to the cultural and intellectual

life of the Fresno metropolitan area and of the state," that "[t]hose projects and facilities draw upon the culturally diverse population of the Fresno metropolitan area and enhance their contributions to community life," that "[t]hose projects and facilities are a critical factor in the economic well-being of the Fresno metropolitan area and of the state," and that "[t]hose projects and facilities are needed to maintain economic development and to promote tourism in the Fresno metropolitan area and of the state." (Gov. Code, § 68056, subds. (b), (c), (d) & (e).)

The Legislature sought to achieve the above stated goals through the creation of an entity known as the Authority. "Creation of a Fresno Metropolitan Projects Authority will promote the health, safety, and welfare of the residents of the Fresno metropolitan area and of the state." (Gov. Code, § 68056, subd. (f).) "It is unfeasible for the County of Fresno or the individual municipal entities to allocate moneys through their general funds. It is in the public interest to allow the voters of the Fresno metropolitan area to create an authority because it calls for a new, low cost, and equitable program of citizen investment in general community projects." (Gov. Code, § 68056, subd. (g).)

The act establishes the Authority itself, and provides that the Authority shall be governed by a 13-member board of directors comprised of representatives of various entities and organizations specifically named in the statute. (Gov. Code, § 68059.)[1] The act directs the board, at its initial meeting, to "call an election pursuant to Section 68059.7 . . . ." (Gov. Code, § 68059.4.)

Government Code section 68059.7 authorizes the Authority to impose the tax ("a retail transactions and use tax at a maximum rate of one-tenth of 1 percent") if a majority of the voters within the geographical boundaries of the Authority approve of authorizing the Authority to levy and collect the tax.

The election was held on March 2, 1993. The tax was approved by 57.4 percent of those who voted. If the tax had not been approved by a majority of the voters, the entire act would have been repealed, by its own terms, as of the date on which the county certified the election results to the Secretary of State. (Gov. Code, § 68059.2.)

Government Code sections 68059.7, subdivision (d) and 68059.8 tell the board how to distribute the proceeds of the tax. Section 68059.7, subdivision

---

[1]Subdivision (g) of Government Code section 68059 provides that "[t]he number of members of the board may be increased to 15 by an affirmative vote of the majority of the members of the board."

(d) requires the Authority to reimburse Fresno County for the county's costs in conducting the above described election. Section 68059.8 provides strict guidelines for the board's distribution of the tax proceeds to various facilities, programs and institutions. The proceeds are to be distributed annually. Fifty percent of the tax proceeds are distributed to four institutions (the Fresno Zoological Society; the Fresno Metropolitan Museum of Art, History, and Science; the Fresno Philharmonic Orchestra; and the Fresno Art Museum). Another 25 percent of the tax proceeds "shall be distributed" to other "scientific, cultural, and multicultural facilities and programs" which meet certain criteria specified in Government Code section 68059.8.

The remaining 25 percent of the proceeds of the tax are accounted for as follows. Eleven and one-half percent "shall be distributed for capital improvement projects or projects that are deemed by the board to enrich the quality of life, or that protect significant natural resources of the authority." (Gov. Code, § 68059.8, subd. (e).) Five percent "may be distributed to local public broadcast entities serving the area of the authority for the production of programs dedicated to local subjects." (Gov. Code, § 68059.8, subd. (c).) Another 5 percent "may be distributed to facilities or programs for purposes of conducting multicultural projects or events for the enrichment of residents of the authority." (Gov. Code, § 68059.8, subd. (d).) Not more than 1.5 percent may be expended for salary and benefits of the staff of the Authority. (Gov. Code, § 68059.6, subd. (e)(4)(B).) All legal costs related to any challenge of the constitutionality of the tax must be paid from the proceeds of the tax. (Gov. Code, § 68059.8, subd. (i).) Any moneys not distributed are to be placed in an interest bearing account with a federally insured bank or savings and loan association "located in the State of California." (Gov. Code, § 68059.8, subd. (f).) The money "shall remain in that account until the board, in its discretion, determines to distribute the moneys in accordance with any of the criteria set forth above." (*Ibid.*)

None of the proceeds of the tax may be used to "finance projects formerly funded by property tax revenues collected by the City of Fresno or the County of Fresno," or to "replace revenues lost by reason of the restrictions of article XIII A of the California Constitution." (Gov. Code, § 68059.8, subd. (g).)

The act further provides that " '[p]ay as you go' financing is the preferred method of financing facilities and programs under this title" but that "the authority may use bond financing as an alternative method if the scope of planned expenditures makes 'pay as you go' financing unfeasible." (Gov. Code, § 68059.8, subd. (h).) Other provisions of the act pertain to procedures to be followed by the Authority if it should choose to issue bonds. Those sections are not pertinent to this appeal and need not be discussed here.

## PROCEDURAL HISTORY

Plaintiffs and respondents Howard Jarvis Taxpayers' Association (a nonprofit public benefit corporation), Citizens for Responsible Government (an unincorporated association), and 16 individual taxpayers brought this action against defendant and appellant Authority. The suit seeks a declaration that the retail transactions and use tax collected and administered by the Authority pursuant to the Fresno Metropolitan Projects Act is an invalid tax. For simplicity, we will refer to respondents collectively as "HJTA."

HJTA's first amended complaint contains three "causes of action."

The first cause of action seeks a declaration that the tax violates article XIII A, section 4, of the California Constitution. Article XIII A was adopted by the people in 1978 when it appeared on the ballot as an initiative measure and is popularly known as "Proposition 13." Section 4 states that "[c]ities, counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, except ad valorem taxes on real property or a transaction tax or sales tax on the sale of real property within such City, County or special district."

The second cause of action seeks a declaration that the tax is an unlawful delegation of the taxing power to private persons or bodies and therefore violates article XI, section 11 of the California Constitution.

The third cause of action seeks a declaration that the tax violates Government Code section 53722. Section 53722 was adopted in November 1986 as part of an initiative measure popularly known as Proposition 62. It provides that "[n]o local government or district may impose any special tax unless and until such special tax is submitted to the electorate of the local government, or district and approved by a majority vote of the voters voting in an election on the issue."

HJTA filed a motion for summary adjudication as to its second cause of action, i.e., a motion seeking an adjudication that the tax violates article XI, section 11, of the California Constitution. (Code Civ. Proc, § 437c, subd. (f)(1).) HJTA argued that the tax violates that portion of article XI, section 11, which provides that "[t]he Legislature may not delegate to a private person or body power to . . . levy taxes . . . ." The court agreed and granted HJTA's motion.[2]

The Authority then petitioned this court for a writ of mandate. The Authority requested that this court issue an alternative writ directing the superior court either to vacate its order granting HJTA's motion for summary adjudication, or to show cause before this court why this court should

---

[2]The Authority also filed its own motion for summary judgment. The court denied the motion. The correctness of that ruling is not in issue on this appeal.

not order the superior court to vacate its order granting the motion. This court asked HJTA to brief the issue of why no judgment had been entered in view of the fact that the superior court had declared the tax invalid.

All parties then jointly filed a motion in superior court requesting that court to enter judgment in favor of HJTA and against the Authority. This appears to have been done in an attempt by all parties to avoid the delay and expenditure of resources which would result from litigating the issue of whether writ review of the superior court's order was appropriate. (See *Connolly* v. *County of Orange* (1992) 1 Cal.4th 1105, 1111 [4 Cal.Rptr.2d 857, 824 P.2d 663].) Judgment was entered, and the Authority filed this appeal.

We note that the appeal is taken solely from the trial court's decision concluding the delegation of taxing power to Authority was a violation of article XI, section 11 of the state Constitution. At the time of the superior court hearing on the summary adjudication motion, the court and the parties felt bound by *City of Woodlake* v. *Logan* (1991) 230 Cal.App.3d 1058 [282 Cal.Rptr. 27], which declared applicable portions of Proposition 62 unconstitutional (the third cause of action encompasses Proposition 62 as set forth in Gov. Code, § 53722 et seq.). Subsequently, and after this appeal was briefed and oral argument was heard, the California Supreme Court found Proposition 62 constitutional, expressly disapproving *City of Woodlake*. (*Santa Clara County Local Transportation Authority* v. *Guardino* (1995) 11 Cal.4th 220 [45 Cal.Rptr.2d 207, 902 P.2d 225].) Proposition 62 defines district as " '. . . an agency of the state, formed pursuant to general law or special act, for the local performance of governmental or proprietary functions within limited boundaries.' " (11 Cal.4th at p. 233, quoting Gov. Code, § 53720, subd. (b).) Whether the Authority falls within this definition is subject to dispute. However, if the Authority does constitute such a "district" then the 57.4 percent voter approval achieved by the Authority fell short of the two-thirds voter approval requirement of Proposition 62.

We cannot in the context of this opinion determine the applicability of *Santa Clara County Local Transportation Authority, supra,* 11 Cal.4th 220. This issue was not decided by the trial court and was neither briefed nor argued to this court. Government Code section 68081 provides "Before the Supreme Court, a court of appeal, or the appellate department of a superior court renders a decision in a proceeding other than a summary denial of a petition for an extraordinary writ, based upon an issue which was not proposed or briefed by any party to the proceeding, the court shall afford the parties an opportunity to present their views on the matter through supplemental briefing. If the court fails to afford that opportunity, a rehearing shall be ordered upon timely petition of any party."

Since we determine that the act before us violates California Constitution, article XI, section 11, we conclude further briefing raising and addressing an issue which was not the basis of the lower court decision would unduly prolong the decisionmaking process without change in consequence. We therefore do not address the issue of whether the tax also violates Proposition 62.

## ARTICLE XI, SECTION 11

The present California Constitution, article XI, section 11, subdivision (a), originated as article XI, section 13, of the Constitution of 1879. It read: "The Legislature shall not delegate to any special commission, private corporation, company, association or individual any power to make, control, appropriate, supervise or in any way interfere with any county, city, town or municipal improvement, money, property, or effects, whether held in trust or otherwise, or to levy taxes or assessments or perform any municipal function whatever."

Professor John C. Peppin's scholarly analysis and review of this constitutional provision in *Municipal Home Rule in California: IV* (1946) 34 Cal.L.Rev. 644, states that the "main purpose" of the provision was "to prevent the giving of unlimited discretion to create debts or burdens which the local authorities must pay." (*Id.* at p. 681, fn. omitted.) The section was also intended to prevent the Legislature from interfering with local affairs in other ways. (*Id.* at pp. 682-684.) A detailed chronicling of the Legislature's penchant for interfering with local matters in the period from 1849 to 1879 is found in Peppin, *Municipal Home Rule in California* (1941) 30 Cal.L.Rev. 1. For example, the Legislature would pass laws directing cities "to open, widen, close, extend, grade or improve streets or to construct other public improvements." (*Id.* at pp. 15-16, fns. omitted.) And laws which in terms purported only to "authorize" a city to allow claims, issue bonds, levy special taxes, open, widen, extend, grade or improve certain designated streets, or make other specific public improvements or to take various other similar kinds of specific action in numerous matters, were in many cases construed by the courts as requiring the cities to undertake the "authorized" action. (*Id.* at pp. 17-18.) The Legislature would also establish commissions or boards and give them control of a city fire department, or of the construction or operation of municipal waterworks, parks, streets or other public enterprises. (*Id.* at p. 14.) "Of a somewhat related character were the numerous laws granting to individuals the power to lay down tracks, pipes or poles in city streets or to construct and operate railroads, gasworks, waterworks or wharves in the designated cities." (*Id.* at pp. 14-15, fns. omitted.)

Only three cases have found a violation of California Constitution, article XI, section 13.

In *Yarnell v. City of Los Angeles* (1891) 87 Cal. 603 [25 P. 767], the court found that a provision of the Los Angeles Freeholders' charter authorizing

the City of Los Angeles to deposit city funds with private banks violated the former California Constitution article XI, section 13's mandate that " 'the legislature shall not delegate to any . . . private corporation, company, association, or individual, any power to . . . in any way interfere with any . . . city . . . money . . . .' " (*Id.* at p. 607, italics omitted.) The *Yarnell* court appears to have viewed the deposits of city money in a private bank to have been an "interference" by a private company (the bank) with city money.

The second case, *City of Los Angeles* v. *Teed* (1896) 112 Cal. 319 [44 P. 580], is similar to *Yarnell*. In *Teed* the city council adopted an ordinance calling for an election on the issue of whether the city should issue certain bonds. The ordinance provided that the bonds would be "payable at the Chemical National Bank, in the City of New York." (*Id.* at p. 324.) The ordinance was approved by the electorate. The provision authorizing payment of the bonds at a New York bank, i.e., "at a place other than the [Los Angeles] city treasury" (*id.* at p. 329) was challenged as a violation of the former California Constitution article XI, section 13. The court agreed, citing *Yarnell* and stating that "[w]e are unable to distinguish that case from the present one, and we think the reasoning there employed applies with at least equal force to this case." (*Id.* at p. 330.) In other words, this too was deemed by the court to constitute a legislative delegation to a private company (Chemical Bank) of power to "interfere with" city money.[3]

The third case is *Merchants Bank* v. *Escondido Irr. Dist.* (1904) 144 Cal. 329 [77 P. 937].) In *Merchants Bank*, the irrigation district pledged its property to the bank as security for the payment of $350,000 worth of the district's bonds. A state law known as the Wright Act purported to authorize the district's board of directors "to pledge, by mortgage, trust-deed, or otherwise, all property of the district . . . including all its rights and privileges held or possessed at the time of the issue of said bonds . . . ." (144 Cal. at pp. 332-333.) When the bank sought to foreclose on the trust deed, the court held that the bank could not do so, apparently because the court deemed the irrigation district itself to be a "municipal improvement" and the exercise of its powers to be a "municipal function." The court stated: ". . . to convey, in addition to the legal title, the statutory powers of the board to the possession and management of the water system and other property of the district would be in contravention of section 13 of article XI of the constitution, which forbids the delegation of such powers. Which

---

[3]Both *Yarnell* and *Teed* appear to have viewed the source of a city's governmental authority to be the Legislature. Only *Yarnell* expressly so states. (See *Yarnell* v. *City of Los Angeles, supra*, 87 Cal. at p. 607.) We need not here be concerned with the correctness of this view. (See Peppin, *Municipal Home Rule in California: IV, supra*, 34 Cal.L.Rev. at p. 687.) In the present case we are not dealing with a city charter (as in *Yarnell*) or a city ordinance (as in *Teed*), but with a law enacted by the state Legislature.

provision, it can hardly be doubted, must (with section 12 of the same article) be construed as applying equally to public or municipal corporations of this character, as to ordinary municipalities or cities. For not only is this construction required by the reason, and consequently by the presumed intention, of the constitutional provision, but the term *municipal*, as commonly used, is appropriately applied to all corporations exercising governmental functions, either general or special; and, indeed, this must be taken as the definition of a *public* or *municipal corporation*." (*Merchants Bank* v. *Escandido Irr. Dist., supra*, 144 Cal. at p. 333.)

*Yarnell, Teed* and *Merchants Bank* were all subsequently abrogated by constitutional amendments. As for *Yarnell* and *Teed*, the Constitution was amended in 1906 to authorize cities to deposit money in California banks, and again in 1918 to authorize cities to deposit moneys in banks outside the state for the payment of principal or interest of municipal bonds.[4] As for *Merchants Bank*, in 1914 a new clause was added to the end of section 13. The new clause stated "except that the Legislature shall have power to provide for the supervision, regulation and conduct, in such manner as it may determine, of the affairs of irrigation districts, reclamation districts or drainage districts, organized or existing under any law of this state."[5]

In June of 1970 the voters passed a ballot measure known as Proposition 2. Proposition 2 was a proposed revision of constitutional provisions dealing with local government. The proposed revision was the work of the Constitution Revision Commission. (See Sumner, *Constitution Revision by Commission in California* (1972) 1 Western St. U. L.Rev. 48.) The commission had organized its study of the Constitution on an article-by-article basis, and sought to revise "both the substance and the language of" each article it reviewed. (Sumner, *supra*, at p. 49.) The June 1970 revisions reduced the length of California Constitution, article XI from more than 10,000 words to less than 1,000. (Sumner, *supra*, at p. 51.)

The most significant revisions appear to have been to provisions other than the former California Constitution, article XI, section 13. For example, the June 1970 revisions included requiring boards of supervisors to be elected rather than appointed, allowing county government (rather than the Legislature) to set the salaries of district attorneys and auditors, allowing

---

[4]These provisions were originally placed in article XI, section 16-1/2, which was added to the California Constitution in 1906. Article XI, section 16-1/2 was redesignated in 1970 as article XIII, section 39. In 1974 the language was modernized and designated as subdivision (b) of article XI, section 11.

[5]The argument presented to voters in 1914 in support of the amendment stated in part that the amendment was needed "in order to increase confidence in the bonds of such districts" and that "[i]n construing section 13 of article XI of the constitution as it now stands, our supreme court has held that it applies to irrigation districts."

counties to establish new departments without legislative approval, prohibiting annexation or consolidation of a city without voter approval, permitting all cities to be charter cities regardless of population, and requiring voter approval for county consolidation or formation of new counties. (Sumner, *Constitution Revision by Commission in California, supra*, 1 Western St. U. L.Rev. at p. 51.)

The June 1970 vote redesignated California Constitution, article XI, section 13 as section 11 and revised its language to its present form. As aforementioned, it now states: "The legislature may not delegate to a private person or body power to make, control, appropriate, supervise, or interfere with county or municipal corporation improvements, money, or property, or to levy taxes or assessments, or perform municipal functions."[6]

In *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480 [96 Cal.Rptr. 553, 487 P.2d 1193], the California Supreme Court explained the significance of the California Constitution, article XI, former section 13. The court stated: "Although section 13 was intended primarily to prevent legislative interference with the financial affairs of municipalities, its prohibition extends to other forms of interference. [Citations.] However, our cases have recognized 'that the section was intended to prohibit only legislation interfering with purely local matters. Special commissions have been upheld if they either fulfill a more than local purpose, under the "larger municipality" doctrine, or promote a "statewide purpose." ' (Fns. omitted.) [Citation.] Adverting to the section's prohibition on delegation of municipal functions to special commissions, we have observed that 'it is clear that the whole

---

[6]We note that the 1970 change also deleted the last clause of the former article XI, section 13 which had been added in 1914 and had said "except that the Legislature shall have power to provide for the supervision, regulation and conduct, in such manner as it may determine, of the affairs of irrigation districts, reclamation districts or drainage districts, organized or existing under any law of this state." Nothing in the November 1974 California Voters Pamphlet attempts to explain why this final clause was deleted. A likely reason, however, would appear to be that the change in the first clause rendered the 1914 final clause a redundancy. In other words, changing "[t]he Legislature shall not delegate to any special commission, private corporation, company, association or individual" to "[t]he Legislature may not delegate to a private person or body" deleted the one category into which an irrigation district, reclamation district or drainage district might arguably have fallen—the category of "special commission." The Legislative Counsel's analysis of November 1970's Proposition 2 was a two-page summary of the many proposed revisions to article XI. Two paragraphs appear to be pertinent to the changes made to the former section 13 and its proposed redesignation as section 11. They stated: "The Constitution now prohibits the Legislature from delegating specified powers over local matters to any special commission, private corporation, company, association, or individual. As revised, the Constitution would retain the prohibition with respect to delegating such powers to private persons or bodies, but the revision would delete the prohibition against delegations to 'special commissions.' . . . The present provision specifically authorizing the Legislature to provide for supervision, regulation, and conduct of the affairs of irrigation, reclamation, and drainage districts organized under state law would be deleted."

object of the provision was to prevent the state legislature from interfering with local governments by the appointment of its own special commissions for the control of purely local matters.' [Citation.] (Italics added.) Similarly, it has been held that section 13 does not forbid delegation of the power to tax [citations] or to interfere with local public improvements [citations] to accomplish purposes of more than purely local concern." (5 Cal.3d at pp. 500-501.)

The court further stated the following about the significance of the 1970 revision: "Present section 11 of article XI, which replaced former section 13 of that article, has been substantially amended. It no longer prohibits delegation of powers to 'special commissions.' Thus, the Constitution Revision Commission's comment on the new section 11 states: 'This . . . Section prohibits delegation by the Legislature of certain powers over local matters. It restates the substance of related existing provisions without change in meaning except the proposal only prohibits delegation to private persons or bodies whereas the existing provision extends to "special commissions." ' [Citation.]" (*People* ex rel. *Younger* v. *County of El Dorado, supra,* 5 Cal.3d at p. 500, fn. 22.)

In Grodin et al., The California State Constitution, A Reference Guide (1993), the authors state at page 199: "As originally enacted in 1879, section 11 consisted of the current subsection (a) only, of which the introductory phrase read: 'The Legislature shall not delegate to *any special commission,* private corporation . . . or individual any power, etc.' The 1970 repeal and reenactment of section 11 intentionally omitted the specific reference to 'special commission,' apparently because of a concern that new regional governmental agencies being proposed in the 1970s might be impeded by a formalistic prohibition of special commissions. Section 11 might now be interpreted to prohibit only the relatively narrow category of delegations made to private entities, as distinct from public or governmental bodies [citation]. Such a construction ignores the long history and purpose of the provision and would no longer serve to protect local government functions from governmental interference but would only offer protection from a private threat for which there is little historical precedent."

We will examine in greater detail the case law history of California Constitution, article XI, section 11 (formerly article XI, section 13), and particularly those cases which have found the provision not to be applicable, when we address in part III of this opinion the Authority's contention that the provision cannot apply when legislative delegation of power to a private person or body is a power pertaining to "regional" as opposed to "local" matters. But first we address the Authority's contentions that it did not levy the tax (pt. I) and that it is not a "private" body (pt. II).

I.

THE AUTHORITY LEVIED THE TAX

 The Authority's contention that the people, and not the Authority, levied the tax, appears to be belied by the language of the act itself.[7] Government Code section 68059.7 states in part: "(a) The authority, subject to the approval of a majority vote by the voters, *may impose a retail transactions and use tax* at a maximum rate of one-tenth of 1 percent under this title.

"(b) Notwithstanding any other provision of law, the authority at the next municipal election, or upon a majority vote of the authority, at any municipal or countywide election prior to December 31, 1994, shall submit to the voters within its geographical boundaries the question of *whether the authority shall be authorized to levy and collect transactions and use taxes* for the purpose stated in this title. The Fresno County Clerk shall be charged with the duty to conduct that election pursuant to the procedures adopted by the board." (Italics added.)

The word "levy" is defined as "1. an imposing and collecting of a tax or other payment 2. an amount levied; tax, etc. . . . levying 1. to impose or collect (a tax, tribute, fine, etc.)" (Webster's New World Dict. (2d college ed. 1982) p. 812.) Article XI, section 11 of the California Constitution uses the term "levy." Government Code section 68059.7 of the act uses the term "impose" in subdivision (a) (and again in subdivision (c)) and the term "levy" in subdivision (b). We think it is apparent both from the definition of "levy" and from the manner in which the statute appears to use the terms "levy" and "impose" interchangeably that "impose" is synonymous with "levy." The statute therefore states in subdivision (a) that "the authority" may levy the tax, and again in subdivision (b) that "the authority" shall be authorized to levy and collect the tax. The Authority does not attempt to argue that the statute is in any way ambiguous about who has the authority to levy the tax. Its conclusory argument that the voters, and not the Authority, levied the tax must therefore be rejected.

We should perhaps also add that if the "levy" of a tax includes the concept of "collecting" the tax (Webster's New World Dict., *supra*), the statutory scheme of the act leaves no doubt about what entity collects the tax and disburses the collected moneys. The Authority collects the tax (Gov. Code, § 68059.7, subd. (b)). And the proceeds of the tax "shall be distributed . . . by the board" of the Authority. (Gov. Code, § 68059.8.) Further, the tax is a 20-year tax which is "subject to termination within 10 years upon a majority

---

[7]For purposes of our discussion in part I of this opinion, we will assume that the Authority is a "private" body within the meaning of California Constitution, article XI, section 11.

vote of the board . . . ." (Gov. Code, § 68059.7, subd. (c).) The "board" is of course the board of directors of the Authority. (Gov. Code, § 68058, subd. (c).)

In sum, the tax is levied by the Authority.

Perhaps the more pertinent question here is not who levies the tax, but rather whether the voter approval called for by Government Code section 68059.7, subdivision (a) and obtained in the March 1993 election somehow renders California Constitution, article XI, section 11 inapplicable to the tax. In other words, even if we assume the Authority is a "private" body, does voter approval of the tax mean that the Legislature has not delegated to the Authority the power to tax? To ask this yet another way, does voter approval mean that the electorate, and not the Legislature, has delegated to the Authority the power to tax?

To answer this question we must address the question of where the power to tax comes from.

■ "Unlike the Federal Constitution, which is a grant of power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature." (*Methodist Hosp. of Sacramento* v. *Saylor* (1971) 5 Cal.3d 685, 691 [97 Cal.Rptr. 1, 488 P.2d 161]; *Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 180 [172 Cal.Rptr. 487, 624 P.2d 1215]; *Armstrong* v. *County of San Mateo* (1983) 146 Cal.App.3d 597, 623 [194 Cal.Rptr. 294].) Thus, "the entire law-making authority of the state, except the people's right of initiative and referendum, is vested in the Legislature, and that body may exercise any and all legislative powers which are not expressly or by necessary implication denied to it by the Constitution." (*Methodist Hosp., supra; Pacific Legal Foundation, supra; Armstrong, supra,* 146 Cal.App.3d at p. 597; *County of Los Angeles* v. *Sasaki* (1994) 23 Cal.App.4th 1442, 1453 [29 Cal.Rptr.2d 103].) "[W]e do not look to the Constitution to determine whether the Legislature is authorized to do an act, but only to see if it is prohibited." (*Fitts* v. *Superior Court* (1936) 6 Cal.2d 230, 234 [57 P.2d 510]; *Methodist Hosp., supra,* )

■ The above stated principle "is of particular importance in the field of taxation, in which the Legislature is generally supreme." (*Armstrong* v. *County of San Mateo, supra,* 146 Cal.App.3d at p. 624; *County of Los Angeles* v. *Sasaki, supra,* 23 Cal.App.4th 1442.) "Generally the Legislature is supreme in the field of taxation, and the provisions on taxation in the state Constitution are a limitation on the power of the Legislature rather than a grant to it." (*Delaney* v. *Lowery* (1944) 25 Cal.2d 561, 568 [154 P.2d 674].) "In other words, the Legislature's authority to impose taxes and regulate the collection thereof exists unless it has been expressly eliminated by the Constitution." (*Armstrong, supra,* 146 Cal.App.3d at p. 624, italics omitted;

*County of Los Angeles, supra*, 23 Cal.App.4th at p. 454; in accord, *California Comp. & Fire Co.* v. *State Bd. of Equalization* (1982) 132 Cal.App.3d 25, 31 [182 Cal.Rptr. 745].)

Article XI, section 11 of the California Constitution prohibits legislative delegation to a private person or body of the power to tax. The act is a delegation by the Legislature to the Authority of the power to tax. The express language of the act conditions the delegation of that power upon voter approval of that delegation. This does not mean, however, that the voters have delegated the power to tax to the Authority. Voter approval is merely a condition, expressly placed by the Legislature in the statute, on the delegation of the taxing power. If the condition (voter approval) had not occurred, the Legislature would not have delegated the taxing power. The condition was satisfied, and the Legislature made the delegation. In effect, the act of the Legislature is subject to ratification by the people. It remains, nonetheless, the act of the Legislature.

Even if we were to view the act as a delegation by the Legislature to the voters of the power to tax (and we do not so view it), and the March 1993 election as a subsequent delegation by the voters to the Authority of that power to tax, such an analysis would still not help the Authority. This is because the Legislature cannot do indirectly what it is prohibited from doing directly. Article XI, section 11 of the California Constitution says that the Legislature cannot delegate to a private person or body the power to levy taxes. The Legislature therefore cannot delegate to a person or body (e.g., to the voters) the power to delegate to a private person or body the power to levy taxes. "[T]he thing which the Legislature is frobidden [*sic*] to do, it cannot delegate to another to do, unless such power of delegation is given by the constitution itself." (*Yarnell* v. *City of Los Angeles, supra*, 87 Cal. at p. 607.)

*Yarnell* dealt with that portion of the constitutional provision (then denominated Cal. Const., art. XI, § 13) which forbade the Legislature from delegating to any private corporation "any power to . . . in any way interfere with any . . . city, town, or municipal . . . money . . . ." (*Yarnell* v. *City of Los Angeles, supra*, 87 Cal. at p. 607.) The court deemed the deposit of the "public moneys" of the City of Los Angeles in a private bank to be a delegation by the city to the bank of the power to "interfere with" municipal money. The court reasoned that because the Legislature could not interfere with municipal money, the Legislature similarly could not "authorize its creatures—municipal corporations—to do it." (*Ibid.*)

The reasoning of *Yarnell* was applied a second time five years later in a remarkably similar case, *City of Los Angeles* v. *Teed, supra*, 112 Cal. 319. In

*Teed* the city council adopted an ordinance calling for an election on the question of whether the city should issue certain bonds. The bonds were to be "payable at the Chemical National Bank in the city of New York." (*Id.* at p. 324) "The election was held, and much more than two-thirds of the qualified electors voting thereat voted in favor of issuing the proposed bonds." (*Ibid.*) The court held, however, that the state statute permitting a city's bonds to be made payable at a place other than the office of the city treasurer violated the former article XI, section 13 of the California Constitution. The court, referring to *Yarnell*, stated: "We are unable to distinguish that case from the present one, and we think the reasoning there employed applies with at least equal force to this case. If the principal and interest of these bonds is to be paid at a bank in the city of New York, that thing can be accomplished only in one of two ways: Either the city treasurer must go, in person, to New York, carrying the money with him, and there pay it out, or he must remit the money by express, draft, or some other mode to that bank, and authorize that bank to make the payment. There is no law which authorizes the city treasurer to go to New York (in the present case semiannually), and take with him the public moneys; and, in the absence of such a law, he certainly has no such power. Even if it be conceded (which is not clear) the legislature is competent to authorize any officer to perform any part of his duties without the state, it has not attempted to confer any such authority in this instance; and there is, therefore, no other alternative than to remit the money to the bank in New York, and make that bank the agent of the city to pay the bonds and coupons. But this is precisely what is forbidden by the constitution, and is, as we regard it, a graver infraction of its provisions that [*sic*] that considered in *Yarnell* v. *Los Angeles, supra*. We are therefore of opinion that the bonds in question, and the ordinance authorizing them, are clearly invalid, and that the defendant cannot be required to sign them." (112 Cal. at p. 330.)

As we have already stated, after *Yarnell* and *Teed* were decided, the California Constitution was amended to expressly provide for the deposit of public moneys in banks and for the payment of public bonds by banks within or outside of California.

More importantly for our purposes, however, there has been no constitutional amendment of the *Yarnell* and *Teed* view that "the thing which the legislature is frobidden [*sic*] to do, it cannot delegate to another to do, unless such power of delegation is given by the constitution itself." (*Yarnell* v. *City of Los Angeles, supra*, 87 Cal. at p. 607.) In sum, if the Authority is a private body, then the Legislature may not delegate to it the power to levy taxes, and may not delegate to another (the people) the power to delegate to a private body (the Authority) the power to levy taxes.

The Authority contends, however, that even if it, and not the voters, levied the tax, the mere fact that the electorate approved the tax at the March 1993 election somehow takes the tax beyond the scope of California Constitution, article XI, section 11. To say this a bit differently, the Authority reads the words "[t]he Legislature may not delegate to a private person or body power to . . . levy taxes" to mean "[t]he Legislature may not delegate to a private person or body power to . . . levy taxes . . . except when the people to be taxed by such private person or body approve of the tax by a majority vote." The reasoning of this argument appears to be as follows. The purpose of the constitutional provision was to prevent legislative interference in local affairs. When those to be taxed approve of the tax by a majority vote, there is no interference with local affairs. Therefore, the argument goes, the constitutional provision does not apply and is not violated.

The flaw in this argument, we think, is that it simply ignores the language of California Constitution, article XI, section 11. The section states: "The legislature may not delegate to a private person or body power to make, control, appropriate, supervise, or interfere with county or municipal corporation improvements, money, or property, or to levy taxes or assessments, or perform municipal functions."

This provision forbids the Legislature from delegating to a private person or body power to "make, control, appropriate, supervise, or interfere with county or municipal improvements, money, or property." But it also forbids the Legislature from delegating to a private person or body power "to levy taxes or assessments." We have no quarrel with the cases which say that the object of the provision was to prevent the state Legislature from interfering with local governments by the appointment of its own special commissions for the control of purely local matters. (*People* ex rel. *Younger* v. *County of El Dorado, supra*, 5 Cal.3d at pp. 500-501.) It seems equally apparent, however, that because taxation has always been a governmental function, the framers would view taxation by a private person or body to be, without more, such an interference. In other words, governments tax and private persons do not. This would explain what appears to be the plain language of the provision. Furthermore, voter approval of the prohibited delegation in *Teed* did not rescue that delegation from the reach of the constitutional provision.

The California constitutional provision was taken from article III, section 20 of the 1873 Pennsylvania Constitution. (Peppin, *Municipal Home Rule in California: IV, supra*, 34 Cal.L.Rev. 644, 677.)

" 'The General Assembly shall not delegate to any special commission, private corporation or association any power to make, supervise or interfere

with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever.'" (*Rettig v. Board of County Com'rs of Butler County* (1967) 425 Pa. 274 [228 A.2d 747, 748], quoting Pa. Const., art. III, § 20.) In *Wilson v. School Dist. of Philadelphia* (1937) 328 Pa. 225 [195 A. 90, 113 A.L.R. 1401], the Supreme Court of Pennsylvania found that legislation giving an appointed school board the power to levy taxes violated Pennsylvania's article III, section 20. The court stated: "This section prohibits the delegation to any special commission of the Legislature's power to tax. The purpose of the provision was to protect against the exercise of the taxing power by officials not subject to the control of the people. *This prohibition is not limited solely to municipal taxation. The words 'to levy taxes' are not modified by the word 'municipal,' whereas the remaining clauses in this section are specifically so modified.* This demonstrates the intention of the framers that no taxing power whatever, state or municipal, be delegated to any special appointive commission. The section becomes an express and emphatic limitation on the power of the Legislature to delegate to a nonelective board or commission the power to tax." (195 A. at p. 99, italics added.)

If the Authority is a private body, but the tax levied by the Authority in the present case is not deemed to be a tax levied by a private person or body within the meaning of California Constitution, article XI, section 11 because of the March 1993 vote approving the tax, then the Authority will control the fiscal power. The voters will have no say in the matter of fund distribution for the next 20 years short of repeal of the entire tax.[8] This appears to us to be precisely the type of situation the framers sought to avoid by prohibiting the delegation to a private body of the power to tax.

The Authority cites several cases to attempt to persuade us that the March 1993 majority approval vote exempts this tax from the applicability of California Constitution, article XI, section 11. None are on point because none of them say that a popular vote approving of the delegation of the taxing power to a private person or body will exempt the tax from article XI, section 11. We briefly review these cases.

In *In re Pfahler* (1906) 150 Cal. 71 [88 P. 270], the Charter of the City of Los Angeles provided for the adoption of city ordinances not only by the

---

[8]We do not imply that the voters might not have the power to institute a tax through an initiative process at a state or even local level as permitted (see *Rossi v. Brown* (1995) 9 Cal.4th 688, 694-697 [38 Cal.Rptr.2d 363, 889 P.2d 557]), or even to repeal such a tax. (*Ibid.*) However, even the people's initiative power carries certain restrictions.

"No amendment to the Constitution, and no statute proposed to the electors by the Legislature or by initiative, that names any individual to hold any office, or names or identifies any private corporation to perform any function or to have any power or duty, may be submitted to the electors or have any effect." (Cal. Const., art. II, § 12.)

vote of the city council and approval of the mayor, but also by way of an "initiative" procedure whereby a proposed law could be placed directly before the voters if a petition, signed by a required number of voters, was presented to the city council. If the proposed law was then approved by a majority of the voters at a general election, it would become law. The initiative process was utilized to adopt a law prohibiting "the killing or slaughtering of animals the flesh of which is to be sold or offered for sale or eaten." (*Id.* at p. 74.) The use of the initiative process to adopt this law was challenged as being violative of the California Constitution, former article XI, section 13. The court disagreed.

The *Pfahler* court held that even if *Yarnell* required the court to deem the city charter to be an act of the state Legislature, the voters' approval of the initiative could not be deemed to be the action of any special commission, private corporation, company, association or individual within the meaning of the former article XI, section 13 of the state Constitution. (*In re Pfahler*, *supra*, 150 Cal. at pp. 86-88.) "Under no circumstances . . . could the aggregate body of qualified electors of a municipality be held to be a 'special commission' within the meaning of the constitutional provision." (*Id.* at p. 87.) "[I]t is manifest that the electors of a municipality, in their capacity as such, do not constitute any such prohibited private agency." (*Id.* at p. 88.)

The superior court in the present case relied on language in *Pfahler*, *supra*, which in essence restated the language of the constitutional provision in stating that "the utmost effect of this section is to prohibit the granting to private agencies, as distinguished from public agencies, the power to control in any degree the property or improvement work of a local subdivision or municipality, or to levy local taxes or assessments, or to perform any municipal function." (*In re Pfahler*, *supra*, 150 Cal. at p. 88.) The superior court viewed this language as barring a tax which the enabling legislation describes as being imposed by "[t]he authority." (Gov. Code, § 68059.)

We think the superior court correctly grasped the significant difference between the *Pfahler* case and the present case. The argument made in *Pfahler* and rejected by the *Pfahler* court was that the initiative process itself, which called for an election on a proposed ordinance submitted to the city council by "registered electors of the city . . . equal in number to 15 per cent of the entire vote cast for all candidates at the last preceding general election at which a mayor was elected" (150 Cal. at p. 74), was an unlawful delegation to a "special commission" (the voters) of the performance of a "municipal function." (150 Cal. at pp. 86-88.) The court rejected the notion that the voters were a "special commission" and rejected the notion that a petition presented by qualified electors to the city council constituted the performance of a "municipal function" within the meaning of the constitutional provision. "Nor is there anything in the claim that the electors signing

the petition for the submission of a proposed ordinance to the vote of the electors either constitute a 'special commission' or perform any 'municipal function.' . . . [T]he petition of the electors is merely an initiatory step, accomplishing no more than to compel a consideration of a proposed matter by those qualified to act and perform municipal functions, and does not itself constitute the performance of a 'municipal function' in any proper sense of those words." (150 Cal. at p. 87.)

In the present case, the issue is not whether the voters constitute a "private body" but rather whether the Authority which levied the tax, and which alone will determine whether the tax stays for 20 years or is repealed, is such a body. (We will address this issue in part II of this opinion.) Nor is there any issue as to whether the Authority's levying of a tax constitutes performance of a municipal function. The constitutional provision does not merely prohibit legislative delegation to a private person or body of the power to perform municipal functions. It also expressly prohibits delegation to a private person or body of the power to do what the Authority did in the present case—levy a tax. Nothing in *Pfahler* stands for the proposition that voter approval of legislation that would delegate to a private body the power to perform a municipal function (or to levy a tax) would not run afoul of California Constitution, article XI, section 11. Indeed, the case says just the opposite. "Aside from the prohibition as to 'special commissions' contained in this section of the constitution, the utmost effect of the section is to prohibit the granting to private agencies, as distinguished from public agencies, the power to control in any degree the property or improvement work of a local subdivision or municipality, or to levy local taxes or assessments, or to perform any municipal function." (150 Cal. at p. 88.)

The Authority next cites *Golden Gate Bridge etc. Dist.* v. *Felt* (1931) 214 Cal. 308 [5 P.2d 585], but a reading of that case reveals that no mention or discussion of the California Constitution, former article XI, section 13, appears anywhere in that case. It is therefore of no help to us or to the Authority.

The third case cited by Authority, *Butterworth* v. *Boyd* (1938) 12 Cal.2d 140 [82 P.2d 434, 126 A.L.R. 838], is similarly unhelpful. In *Butterworth* a proposed charter amendment to the Charter of the City and County of San Francisco was approved by the electorate of the city and county, and became effective by concurrent resolution of the Legislature. The amendment called for a "health care system" for municipal employees. It was to be administered by a "Health Service Board" consisting of nine members elected by members of the system for three-year terms. The court rejected a number of arguments challenging the legality of the charter amendment. One of them, an argument that the charter amendment violated the former article XI,

section 13 of the California Constitution, was briefly addressed and rejected by the court as follows: "It is next contended that the amendment makes an unconstitutional delegation of legislative power to the board to perform municipal functions, in violation of article XI, section 13, of the California Constitution. But this section merely prohibits the legislature from interfering with the municipalities in respect of their municipal affairs, and has no application to the appointment of boards or officers pursuant to valid charter provisions. [Citation.]" (12 Cal.2d at p. 149.)

The quoted paragraph is the only mention of the California Constitution, former article XI, section 13 in the 12-page majority opinion in *Butterworth*. The Authority appears to urge this court to read *Butterworth* as saying that voter approval of a charter provision (or, as in the present case, of a tax authorized by state statute) exempts the charter provision or statute from the reach of the constitutional provision. But the *Butterworth* court does not say that. Because the *Butterworth* court elsewhere in its opinion concludes that the establishment of a health service system is a "municipal affair" within the meaning of another provision of the Constitution, and because the *Butterworth* court cites as its authority, *In re Pfahler, supra*, 150 Cal. at page 87, it appears to us that the *Butterworth* court's two-sentence discussion of article XI, section 13 was probably simply a roundabout way of saying that the health service board in *Butterworth* was not a "special commission" within the meaning of that provision. The validity of the tax in the present case, however, would depend upon whether the Authority is or is not a "private" body within the meaning of the constitutional provision.

In *The Housing Authority* v. *Dockweiler* (1939) 14 Cal.2d 437 [94 P.2d 794], the Legislature passed a law calling for the establishment of housing authorities in the cities and counties of the state. Such a housing authority would have various powers, including "the right to acquire by eminent domain such property as is necessary to their low-rent dwelling projects." (*Id.* at p. 444.) The court rejected the contention that the law violated the constitutional provision. The law included a clause providing that an authority created under the act " 'shall not transact any business or exercise its powers hereunder until or unless the governing body of the city or the county, as the case may be, by proper resolution shall declare at any time hereafter that there is a need for an authority to function in such city or county'." (*Id.* at p. 463.) The court stated that "[i]n view of this provision of the act, it must be concluded that it is the local governing body, and not the legislature, that confers upon the authority the right to exercise its functions."

We think *Dockweiler* is distinguishable from the present case. The *Dockweiler* court appears to have viewed the city and county governments as

having had the power to determine whether each city and county would have a housing authority operating within the city or county borders. When each city or county passed the proper resolution, the city or county in essence enacted local legislation creating a housing authority in that city or county. Indeed, a state statute mandating a city to create a housing authority, even if an elected city council did not want one, might well have violated the constitutional provision because it might well have been viewed as the Legislature delegating to a special commission "power to . . . interfere with . . . city . . . property . . . or perform any municipal function whatever."

In the present case, however, no preexisting local government body levied this tax or authorized the Authority to levy it. And, as we have explained, the voters within the geographical district of the Authority did not derive from the Legislature the power to confer upon a private person or body the power to levy a tax. Furthermore, nothing in *Dockweiler* supports the view that a vote of the electorate approving of a delegation of power to a private person or body exempts that delegation from the constitutional provision. There was no vote of the electorate in *Dockweiler*. The Los Angeles County Board of Supervisors passed a resolution authorizing the housing authority. (*The Housing Authority* v. *Dockweiler, supra,* 14 Cal.2d at pp. 443, 446.)

The Authority also cites two Pennsylvania cases which it says support its contention that the Authority did not "levy" the tax within the meaning of California Constitution, article XI, section 11. These cases, *Minsinger* v. *Rau* (1912) 236 Pa. 327 [84 A. 902] and *Moore* v. *School Dist. of Pittsburgh* (1940) 338 Pa. 466 [13 A.2d 29], are easily distinguishable from the present case because in *Minsinger* and *Moore* the Pennsylvania Legislature itself enacted the tax, whereas in the present case Government Code section 68059.7 purports to give the Authority itself the power to determine whether any tax will be imposed at all. In *Minsinger* the statute required school districts of the first class to collect a tax of " 'not . . . less than five nor more than six mills on the dollar of the total assessment of all property assessed and certified for taxation therein.' " (84 A. at p. 903.) In *Moore* the state statute stated "In all school districts of the first class, the school taxes for the following fiscal year shall be levied annually, by the board of school directors thereof . . . ." (13 A.2d at p. 30, fn. 1.) The statute then went on to state when the tax should be levied and a formula for the computation of the amount of the tax. In the present case, however, Government Code section 68059.7 states that the Authority "may" impose a transaction and use tax, subject to the approval of a majority vote of the voters. Furthermore, even if the Authority imposes such a tax, subdivision (c) of the statute authorizes the Authority to terminate the tax upon a majority vote of the Authority's board of directors. The Authority appears to contend that

*Minsinger* and *Moore* hold that the power to tax has not been delegated when the appointed body is directed by the legislature to levy a tax and when the legislature determines, to a degree of reasonable certainty, the amount of that tax. Assuming that the Authority correctly reads *Minsinger* and *Moore*, the first part of that test is still not satisfied in the present case.

## II.

### THE AUTHORITY IS A "PRIVATE" BODY

■ The superior court's ruling pointed out that there appears to be no reported case involving the delegation by the Legislature of the power to tax to a body whose members were neither elected by the voters nor appointed by government officials who were themselves elected by voters. The superior court deemed the language of California Constitution, article XI, section 11 to be a safeguard against just such a situation, and found the Authority to be a "private" body within the meaning of the constitutional provision. We agree.

There are no cases construing the California Constitution, article XI, section 11 phrase "private person or body." The Authority and HJTA agree that the word "private" modifies both the word "person" and the word "body." This reading of the phrase "private person or body" seems apparent not only from the language of the phrase itself, but also from the fact that the California Constitution expressly authorizes some bodies to levy taxes. "The Legislature may not impose taxes for local purposes but may authorize local governments to impose them." (Cal. Const., art. XIII, § 24.) Thus a local government is a body that is expressly authorized to levy or "impose" taxes.

But may the Legislature create a body, declare who its members will be (or declare what private entities or individuals may appoint the members of the legislatively created body), and delegate to that body the power to tax? Clearly the Legislature may not delegate to "Mr. Fred Smith" (a private person) the power to tax. Such a course of action appears to us to be prohibited by California Constitution, article XI, section 11. May the Legislature instead create the "Fred Smith Authority," give it the power to tax, declare that it shall be governed by a board of directors, and declare that Mr. Fred Smith (and perhaps also Mr. Smith's wife) shall constitute the board? We fail to see any meaningful distinction between these two situations.

In the present case the 13 members of the board of directors of the Authority are appointed, in accordance with Government Code section 68059, subdivision (b).

Further, 11 of the 13 members are chosen by various organizations which are undisputedly private with no governmental subservience. Specifically, Government Code section 68059 states in relevant part:

"(b) The authority shall be governed by a 13-member board of directors comprised of:

"(1) One representative of the Board of Supervisors of Fresno County.

"(2) One representative of the Fresno City Council.

"(3) One representative of the Eleventh District of the Parent Teachers' Association.

"(4) One representative of an ad hoc committee of retired judges from Fresno County's local and state benches.

"(5) One representative of the Fresno City and County Chamber of Commerce.

"(6) One representative of the Older Americans Association of Fresno County.

"(7) One representative of an ad hoc committee of representatives of the Taxpayers Association of Fresno County and the San Joaquin Taxpayers Association.

"(8) One representative of the Citizens for Community Enrichment.

"(9) One representative of the Fresno County Farm Bureau.

"(10) One representative of the Fresno-Madera Central Labor Council.

"(11) One representative of the League of Mexican-American Women.

"(12) One representative of the West Fresno Ministerial Alliance.

"(13) One representative of the California Retired Teachers Association, Fresno County Division.

"(c) Vacancies in any of the board positions shall be filled by the appointing entity or organization."

In *Wilson* v. *School Dist. of Philadelphia, supra,* when the Supreme Court of Pennsylvania ruled that a state law delegating to an appointive school board the power to tax violated the 1873 Pennsylvania constitutional provision (art. III, § 20) which California adopted in 1879 as California Constitution, article XI, section 13 (see Peppin, *Municipal Home Rule in California: IV, supra*), the court stated: "[T]he main purpose of Article 3, § 20 was 'to correct the recognized economic mistake of taking the fiscal power away from the regular, legislative body and putting it in the hands of an appointive commission, organized for special purposes and not subject to the control of the people." (195 A. at p. 99.) The court further stated: "But it is urged the school board is not a 'special commission,' because at the time the

Legislature invested it with taxing power, it was an existing governmental body or agency, regularly constituted and exercising general administrative powers in connection with the public school system of the state. It is quite true it was such a body or agency and could lawfully exercise all the legitimate powers granted to it, whether or not it is a special commission for such purposes. It is the established governmental agency for the administration of the educational system. But when the taxing power was lodged in it, it was quoad that power a special appointive commission. It must be remembered that the taxing power is a separate special power, and is not a component part of the power to educate. When an appointive school board, which is a board of education, is empowered to levy taxes, it is a special commission to levy taxes." (*Wilson* v. *School Dist. of Philadelphia, supra,* 195 A. at p. 99.)

Although California's present California Constitution, article XI, section 11 now uses the term "private person or body" and not the term "special commission," we see nothing in this change which suggests that the new language was intended to grant to an unaccountable appointive body the power to tax. Twenty pages of the June 1970 voters' ballot pamphlet pertain to Proposition 2 and its proposed changes to article XI. One small paragraph of this material appears to attempt to explain the change made to the first sentence of the former article XI, section 13. That paragraph makes no mention whatsoever of the taxing power, and merely says in essence that the old language will be replaced with the new.

The Authority points out that it possesses many attributes in common with entities which are unquestionably public, and argues that therefore we should deem it too to be "public" and therefore not "private." For example, the Authority was created by the Legislature. Its board members are required to file economic disclosure statements. (Gov. Code, § 68059, subd. (h).) The board members are required to reside within the boundaries of the Authority. (Gov. Code, § 68059, subd. (e).) Its board meetings must be conducted in accordance with the open meeting provisions of the Ralph M. Brown Act. (Gov. Code, § 68059.6, subd. (d).). It must cause an audit of its financial transactions and records to be made "at least annually" by a certified public accountant. (Gov. Code, § 68059.6, subd. (e)(3).) All claims for money or damages against it are governed by the Tort Claims Act. (Gov. Code, § 68059.6, subd. (e)(4)(E).)

The Authority cites several cases in support of its position. Some of these have nothing whatsoever to do with the constitutional provision. Others mention it but do not appear to provide support for the view that the Legislature may delegate the power to tax to an unaccountable appointive body.

The Authority relies on *People* ex rel. *Chapman* v. *Rapsey* (1940) 16 Cal.2d 636 [107 P.2d 388], and *Ex Parte Gerino* (1904) 143 Cal. 412 [77 P.

166] to support its contention that it is not a "private" body within the meaning of California Constitution, article XI, section 11. Neither of these cases involved an interpretation of article XI, section 11 or of its predecessor, former article XI, section 13.

In *People* ex rel. *Chapman, supra,* the court held that when a city judge of the City of San Bruno accepted the office of city attorney for the City of San Bruno, his acceptance of the latter office "had the effect of vacating or terminating his right to hold the office of city judge." (16 Cal.2d at p. 644.) Although there was no statute or city ordinance expressly prohibiting one person from holding both offices simultaneously, the court relied upon a "common law rule . . . that acceptance by a public officer of another office which is incompatible with the first thereby vacates the first office; that is, the mere acceptance of the second incompatible office per se terminates the first office as effectively as a resignation." (*Ibid.*) In order to apply this rule, the court first had to conclude that the post of city attorney was a "public office." The court stated: " 'It seems to be reasonably well settled that where the legislature creates the position, prescribes the duties, and fixes the compensation, and these duties pertain to the public and are continuing and permanent, not occasional or temporary, such position or employment is an office and he who occupies it is an officer. In such a case, there is an unmistakable declaration by the legislature that some portion, great or small, of the sovereign functions of government are to be exercised for the benefit of the public, and the legislature has decided for itself that the employment is of sufficient dignity and importance to be deemed to be an office.' " (*People* ex rel. *Chapman* v. *Rapsey, supra,* 16 Cal.2d at p. 639.) The court went on to say:

" ' "The words 'public office' are used in so many senses that the courts have affirmed that it is hardly possible to undertake a precise definition which will adequately and effectively cover every situation. Definitions and application of this phrase depend, not upon how the particular office in question may be designated nor upon what a statute may name it, but upon the power granted and wielded, the duties and functions performed, and other circumstances which manifest the nature of the position and mark its character, irrespective of any formal designation. But so far as definition has been attempted, a public office is said to be the right, authority, and duty, created and conferred by law—the tenure of which is not transient, occasional, or incidental—by which for a given period an individual is invested with power to perform a public function for public benefit.

" ' "The individual who occupies such an office is a public officer. He is a public agent and as such acts only on behalf of his principal, the public,

whose sanction is generally considered as necessary to give to acts performed by the officer the authority and power of a public act or law." ' " (16 Cal.2d at pp. 639-640.)

The Authority appears to argue that because taxation is a public function, whenever the Legislature delegates to a person or body the power to tax to a person or body, that person or body must necessarily be public. But if that were so, the constitutional provision would never be violated. Anyone to whom the Legislature delegated the power to tax would automatically cease being a "private person or body."

In *Ex Parte Gerino, supra,* 143 Cal. 412, the court upheld a statute prohibiting the practice of medicine without a license issued by the state board of medical examiners. The petitioner was in custody on a charge of practicing medicine without a license. The licensing act prohibited the practice of medicine by anyone who had not received a license or "certificate" issued by the state board of medical examiners. It empowered the board to issue the certificate to those who had satisfactorily passed an examination. The act also specified that the board of medical examiners would include seven members who were each elected by one of three specifically named medical societies. The petitioner claimed that this latter aspect of the act violated various provisions of the California Constitution prohibiting the granting to any association or class of citizens "privileges" or "immunities" not granted to all citizens. The court rejected this argument and stated "[i]n our opinion the power to appoint officers in such cases is not one of the rights or privileges contemplated by the provisions of the constitution upon which the petitioner relies." (143 Cal. at p. 415.) The Authority here relies upon a portion of the *Gerino* opinion in which the court talks about the power of the Legislature to appoint "officers." The court stated:

"The Legislature has power to establish offices in addition to those created by the Constitution itself. Section 4 of article XX provides that '. . . all officers . . . whose offices or duties may hereafter be created by law, shall be elected by the people, or appointed, as the Legislature may direct.' This gives the Legislature power to declare the manner in which officers other than those provided by the Constitution shall be chosen. Such officers may be appointed by the Legislature itself, or the duty of appointment may be delegated and imposed upon some other person or body. [Citations.] There is no limitation to any particular person or class of persons upon whom alone the Legislature might impose this obligation . . . .

"In exercising the power in this particular case the [medical] societies mentioned in the law are acting for the benefit of the state and the people at large . . . . The board of examiners, when constituted, is not the agent of the medical societies which appoint its members, and its functions are not conferred or designed for the benefit of those societies or either of them. The

board constitutes a state agency for the regulation of the practice of medicine and surgery, and it must discharge that duty under oath and impartially for the benefit of the people, and not for the promotion of the interests of any school of medicine or medical society . . . ." (143 Cal. at pp. 414-415.)

As we have noted in setting California Constitution, article XI, section 11 in its historical context, prior to the advent of that constitutional provision there was legislative intrusion into local matters. Individual private entities and designated groups were given the power to control street projects, railroad access, etc. Concomitant with this grant of authority was the power to impose fees, assessments and bonds to fund these projects. However, the responsibility to pay these fees fell upon the local populace, who did not have a voice in the issue. In general terms, it was taxation without representation. In this regard the fundamental principles of democracy come to the fore.

Foremost of the principles of democracy is that the governed select those who govern. Further, those who act on behalf of the governed have accountability to the governed. In other words, the people choose who occupies positions of public trust or the people choose those who choose individuals to occupy positions of public trust. Either way there is accountability to the people.

In effect, one who is a public officer receives a delegation of sovereign power but it is not a delegation without restraint. Necessarily, those who grant the power retain some control. Thus, we perceive the significant characteristic of public office includes the right to choose and the right to remove. This is not to say that it is necessary that the electors individually choose those who occupy a public position. However, those making the selection have public accountability. Thus, while the electorate may not have an expressive voice in an appointment of an individual, the electorate does have a voice in the appointing authority. In other words, there is some public accountability. Likewise, the essence of that accountability includes the power to remove. Although its genesis is in revolution, it is hardly a revolutionary concept in democratic society that the governed can by removal express their dissatisfaction with those who govern.

Herein lies the fundamental distinction between the Authority and a public body. With the exception of 2 of the 13 directors, the remaining 11 are chosen by private entities who have no public accountability. The electorate cannot remove those who are chosen as directors of the Authority and the electorate cannot remove those who choose. But the electorate must bear the consequences of the decisions of those who compose the Authority. And part of that consequence is public taxation and distribution of public taxes as determined by the Authority—unaccountable except to entities which have no public accountability. As we see it this is a distinction that marks the Authority as a private body.

We have no quarrel with the Authority's view that in general the Legislature may create new public offices and determine the manner in which those offices will be filled. But no case holds that the Legislature may create an office, determine that the office will be filled by an officer not selected by the public or by a person or body elected by the public, and then give that office the power to levy a tax.

We conclude that the superior court was correct in concluding that the Authority is a "private" body within the meaning of California Constitution, article XI, section 11.

## III.

### THE PURPORTED "REGIONAL" NATURE OF THE AUTHORITY DOES NOT EXEMPT THE TAX FROM ARTICLE XI, SECTION 11

 The Authority argues that even if it is deemed to be a "private" body within the meaning of the constitutional provision, the tax does not violate the constitutional provision because the constitutional provision does not prohibit the delegation of the taxing power to a private body when the tax is for a "regional" purpose. According to the Authority, only taxation by a private body for a "local" purpose would violate California Constitution, article XI, section 11.[9]

---

[9]Government Code section 68059.1 describes the geographical boundaries of the Authority as follows: "The boundaries of the Authority shall be the area within the adopted sphere of influence of the City of Fresno, as identified in Resolution Number AD-89-5 of the Fresno County Local Agency Formation Commission, as reviewed May 2, 1990." Because HJTA's motion for summary adjudication contended, as we today hold, that article XI, section 11 is violated whenever the Legislature purports to delegate to a private person or body the power to levy any tax, HJTA presented no evidence on whether the tax was "regional" or "local." The Authority's opposition asserted as a "material fact" (see Code Civ. Proc., § 437c, subd. (b)) that "[t]he Authority's jurisdiction is greater than the City of Fresno; it includes portions of the surrounding County." The Authority cited as evidence in support of this "fact" the declaration of Daniel Whitehurst. The Whitehurst declaration states in part: "The [Citizens for Community Enrichment] began drafting the enabling legislation. Early CCE discussion contemplated an authority created for the benefit of the people of the entire County of Fresno. However, the vast majority of benefits would inure to citizens residing in the Fresno metropolitan area and it was determined that it would be inequitable and politically problematic to have citizens pay for projects and programs for which they would not realize a direct benefit. Also, the members of the CCE Board, of which I was a part, soon realized that to promote a County-wide measure would be prohibitively costly. Additionally, Legislative counsel advised the CCE that the statute had to comply with the *Rider* v. *County of San Diego* case. Accordingly, the CCE decided that the boundaries of the Authority should reflect the area most benefited, i.e., an area broader than the City, but more narrowly drawn than the County of Fresno. [¶] . . . [¶] The Authority's boundaries are not coterminous with the City of County of Fresno. The Authority's area is broader than the City of Fresno. It includes portions of the County that border the City, but it includes less than all of the County." The "Voters' Pamphlet" for the March 1993 "Consolidated District Primary Election" contained an "Impartial Analysis by Local Agency Formation Commission" which described the

California Constitution, article XI, section 11 says that "[t]he Legislature may not delegate to a private person or body power . . . to levy taxes or assessments . . . ." It does not say that a private person or body may levy taxes so long as the taxes are levied for a regional purpose, but may not levy taxes for a "local" purpose. "The words 'to levy taxes' are not modified by the word 'municipal,' whereas the remaining clauses in this section are specifically so modified." (*Wilson* v. *School Dist. of Philadelphia*, *supra*, 195 A. at p. 99.)

The Authority's argument appears to be based upon, and to be an extrapolation of, certain case law interpretations of the former California Constitution, article XI, section 13. No case, however, has held that a private person or body (or "private corporation, company, association or individual" under the former § 13) may levy any tax whatsoever, whether for a regional purpose or for any other purpose. In order to fully explain why the Authority has raised its "regional" purposes argument, and why we reject the Authority's contention that a private body may levy "regional" taxes, a chronological review of some of the jurisprudential highlights of this constitutional provision is helpful.

We have already mentioned that article XI, section 13 of the 1879 California Constitution was taken from article III, section 20 of Pennsylvania's 1873 Constitution, and that Pennsylvania has recognized that the word "taxes" is not modified by any adjective.

In *Davies* v. *City of Los Angeles* (1890) 86 Cal. 37 [24 P. 771], a resident of Los Angeles sued the "street superintendent of said city" to declare void an assessment made against his property for the payment of the expenses of opening and widening a certain street. (*Id.* at p. 39.) "The proceedings complained of were had under and in conformity to the act of the legislature of 1889, providing for the opening and widening of streets." (*Ibid.*) The court rejected various attacks on the constitutionality of the state statute. One of these was an argument that the statute violated California Constitution, article XI, section 13. The court concluded that there was no violation because the statute made the street commissioners agents of the city council. The court stated: "Finally, it is contended that the statute is in violation of section 13 of article 11 of the constitution of this state, because it delegates to a special commission the power to perform municipal functions. But conceding, without deciding, that the opening or widening of public highways within a city are municipal functions, it does not appear that any such

geographical boundaries of the Authority area as follows: "The Authority area includes 142 square miles. The westernmost limit is Garfield Avenue, the southernmost is American Avenue, the easternmost is Local Avenue, the northernmost is the San Joaquin River and Copper Avenue. Both incorporated and unincorporated areas within the Sphere of Influence of the City of Fresno are included. The Clovis and Malaga areas are not included."

functions were delegated to this commission. The commissioners are simply made the agents of the municipalities to assist them in opening streets. They act under the direction of the city authorities, and their acts are not binding or effective until the same are approved and confirmed by the city council. Therefore, the act done is the act of the city, at last, and not of the commissioners." (*Davies* v. *City of Los Angeles, supra,* 86 Cal. at pp. 48-49.)

We have already discussed the 1906 case of *In re Pfahler, supra,* 150 Cal. 71. *Pfahler* involved a city ordinance which was adopted pursuant to an "initiative" provision in the city's charter and which prohibited the slaughtering of animals within the city. Its holding that the electors of a city who sign a petition calling for the city council to enact an ordinance, or to submit the proposed ordinance to a vote of the people are neither a "special commission" nor a private company or association was not pertinent to the regional versus local distinction now advanced by the Authority. But the dicta in *Pfahler* has been seized upon by both the Authority and HJTA.

The Authority calls our attention to a statement in *Pfahler* in which the court, referring to California Constitution, article XI, section 13, states ". . . it is clear that the whole object of the provision was to prevent the state legislature from interfering with local governments by the appointment of its own special commissions for the control of purely local matters." (150 Cal. at p. 87.) The Authority asks that we infer from this statement that where no "local matter" is involved, the constitutional provision cannot be violated. But the hyperbole of this dicta in *Pfahler* is readily apparent. On the very next page of the opinion, the *Pfahler* court expressly recognizes what section 13 expressly states—namely that the section applies to more than just the Legislature's appointment of "special commissions." It also prohibits the delegation of certain powers to a "private corporation, company, association or individual," or what the *Pfahler* court refers to in a shorthand manner as "prohibited private agency." (150 Cal. at p. 88.) Furthermore, nothing in the *Pfahler* case presented any issue of whether the section 13 prohibition applied to a "regional" tax or a "local" tax. There was no tax in issue in *Pfahler.* The issue was whether the city ordinance prohibiting animal slaughtering was valid.

Eight years later in *Pixley* v. *Saunders* (1914) 168 Cal. 152 [141 P. 815], a property owner objected to a tax levied on his property by a sanitary district. The property owner did not contend, however, that a sanitary district did not have the power to levy a tax. The sanitary district had been formed in 1902. Then in 1908 the town of Larkspur was incorporated, and the property owner's ranch was also included within the boundaries of the town. The property owner contended that "the power of providing sewers is peculiarly a municipal affair" and that once the town of Larkspur was

incorporated, the ranch "passed out of the control and jurisdiction of the Sanitary District." (168 Cal. at p. 154.) The court rejected this argument and stated: "[W]hile generally the question of sanitation is a municipal affair, in many instances it is one of broader scope, which cannot be adequately handled by the municipal authorities of a single town. Therefore it cannot be said to be a 'local' or 'municipal' affair within the inhibition of sections 12 and 13 of the constitution above quoted, and it falls within the class of public purposes such as irrigation and reclamation, for which the legislature has the undoubted authority to provide governmental agencies or districts by general laws." (168 Cal. at p. 160.)

The property owner in *Pixley* made no contention that a sanitary district would never have the power to levy a tax on properties within such a district's boundaries. Although the opinion does not expressly say so, the property owner apparently paid whatever taxes the district levied before his ranch became included within the territorial limits of the newly incorporated town of Larkspur. His contention was that because providing for sewers was inherently or "peculiarly" a municipal affair, properties in Larkspur (including his own) were no longer part of the sanitary district after Larkspur's incorporation as a town. In the words of the court, the property owner argued that "immediately upon the annexation or incorporation of any portion of the territory of a sanitary district, such annexed or incorporated tract becomes part of another *emporium* and is relieved from the control of the sanitary district to which it formerly owed allegiance." (168 Cal. at p. 154.) The property owner paid taxes to the town of Larkspur. (*Id.* at p. 153.) He simply did not want to pay taxes to the sanitary district also. There was no contention in *Pixley* that the sanitary district's board of directors was a "private corporation, company, association or individual" within the meaning of California Constitution, article XI, section 13. The opinion mentions nothing about how the members of the "Sanitary Board of the District" (168 Cal. at pp. 153-154) obtained their offices as board members. The manner in which they obtained those offices was simply not in issue in the case.

*Henshaw v. Foster* (1917) 176 Cal. 507 [169 P. 82] is much like *Pixley v. Saunders, supra*, 168 Cal. 152. In *Henshaw* a state statute set forth a procedure whereby qualified electors could petition the county board of supervisors to call an election on the question of whether a proposed water district should be formed. Property owners within the boundary of the proposed water district sought to enjoin the board of supervisors from calling an election after a petition signed by the requisite number of qualified electors within the territory of the proposed new district had been filed. The proposed new water district included land located in three incorporated cities, land located within a preexisting irrigation district, and land not

located within any preexisting municipality. Just as the property owner in *Pixley* had argued that a sewage system is a municipal function, the property owners in *Henshaw* argued that the supplying of water to a city is a matter under the "exclusive authority" of cities. (176 Cal. at p. 512.) The court rejected this argument and stated: "The corporate authority of such a district is the board of directors, and to that board is delegated the taxing power not in relation to matters of a purely local character in the included city or cities, but having reference to the affairs of the larger municipality embracing within it the others of lesser areas. In this view of the statute there is no violation of section 13, because the legislature does not delegate to the directors control or supervision of any of the purely local affairs of the cities, but by general law enables the inhabitants of a region, including cities, to form a district and to elect their own taxing board to raise the necessary funds for district purposes." (176 Cal. at p. 512.)

There was no contention in *Henshaw* that a water district with the power to tax could never be formed. Rather, the contention was that a water district with the power to tax could not be formed so as to include a preexisting city because the supplying of water to those cities was a city or "municipal" function. In other words, the property owners contended that the statute violated California Constitution, article XI, section 13 because " 'it delegates to someone other than the corporate authorities the power to assess and collect taxes for city and municipal purposes.' " (176 Cal. at p. 512.) The court rejected this argument. The court in *Henshaw* did not, however, even address the question of whether the Legislature could delegate to a private corporation, company, association or individual the power to tax. This issue was not raised in the case. Indeed, the opinion expressly notes that if the proposed water district were to be approved at the election, its board would be an elected board. (*Id.* at p. 512.) Nor did the *Henshaw* court say that section 13 could only apply when "local" as opposed to "regional" matters were in issue. The court simply rejected the property owners' contention that the supplying of water to a city was necessarily a "municipal function" which could not be delegated to an entity outside of the city government.

In *Doyle* v. *Jordan* (1926) 200 Cal. 170 [252 P. 577], the court relied on *Henshaw* to reject a contention that a state law authorizing the formation of bridge and highways districts violated California Constitution, article XI, section 13. The section 13 argument is but one of many arguments raised by the opponents of the bridge and highway districts. The court, without elaborating on the nature of the section 13 argument raised by the opponents, simply stated: "The final contention of the *amici curiae* is that the act in question is unconstitutional in that it is violative of article XI, section 13 of the constitution. Practically the same question was raised to the validity of

statutes creating sanitary districts and county water districts as is now raised by the *amici curiae* against the constitutionality of the bridge and highway act. In each case it was held that the statute in question did not violate the above provisions of the constitution [citations]. We can see no valid distinction between the questions involved and decided in those cases and that raised by the *amici curiae*, in the present proceeding under their final contention as to the constitutionality of the bridge and highway act. Upon the authority of these cases we have no hesitancy in holding that the statute under consideration does not violate article XI, section 13, of the constitution of this state." (200 Cal. at pp. 191-192.)

In *City of Pasadena* v. *Chamberlain* (1928) 204 Cal. 653 [269 P. 630], a case upon which the Authority heavily relies, the court upheld the constitutionality of the Metropolitan Water District Act of 1927 and rejected a contention that it violated California Constitution, article XI, section 13. The act set forth a procedure whereby cities could choose to join together in the formation of water districts. This process included having the legislative body of each city desiring to join such a district pass a resolution so declaring. Each such city would take part in a special election to determine if a majority of all the cities' voters approved of formation of a water district. The opinion does not provide any detail about how the board of directors of such a district would be selected except to say that the exercise of such a district's powers would be "entrusted to and performed by and through a board of directors, which shall consist of at least one representative from each municipality which has become, for the purposes stated in said act, an integral part of such water district." (204 Cal. at pp. 657-658.) The act gave such a board "power to impose taxes upon the property of the inhabitants of the municipalities uniting in such formation and in the manner provided for in said legislation." (204 Cal. at p. 664.)

The court in *City of Pasadena, supra,* addressed, apparently for the first time, a contention that taxation by such a water district would violate California Constitution, article XI, section 13 because the act purported to authorize a "special commission" to levy a tax. In the words of the court, "[i]t is the further contention of the respondent . . . that the act is . . . unconstitutional as an attempt to unlawfully delegate the power of taxation to a special commission under the provisions of section 13 of article XI of the constitution . . . ." (204 Cal. at p. 664.) The court rejected this argument. But the court did not hold that section 13's language prohibiting the delegation of the power to tax to certain entities applied only to "local" taxes. Rather, it held that section 13 did not apply because such a district's board of directors would not qualify as a "special commission." The court stated: "The difficulty with the foregoing contention as to the application of

the above constitutional provision to the situation presented in the instant proceeding consists in the fact that the official body or board of directors to whom the management and control from municipal water districts has by the terms of said act been entrusted and which is to exercise the powers and perform functions of the governmental agency thus to be created does not come within any of the designations of commissions, corporations, companies, associations, or individuals to which the inhibition of the foregoing section of the constitution applies. On the other hand, the governing body or board of directors of metropolitan water districts are in the same sense the governing officials thereof as are the city council or boards of trustees of municipalities or of such other governmental agencies as have heretofore been invested with powers and duties of a *quasi*-municipal character." (204 Cal. at p. 665.)

The *City of Pasadena* court then goes on to quote extensively from *Henshaw, supra,* even though *Henshaw* did not directly address the issue of whether a water district was or was not a special commission.

After the *City of Pasadena* case was decided, the water district whose formation was opposed in that case was eventually formed, and issued bonds. The validity of those bonds was the subject of another case, *In re Metropolitan Water Dist.* (1932) 215 Cal. 582 [11 P.2d 1095]. The *In re Metropolitan Water Dist.* case pointed out that members of boards of directors of water districts organized under the Metropolitan Water District Act of 1927 were in fact appointed and not elected, although *City of Pasadena* itself strongly implies that those appointments were made by elective governmental bodies of the member cities. The court in *In re Metropolitan Water Dist.* stated: "The next contention of defendant is that the act violates article XI, sections 12 and 13 of the California Constitution, in permitting the appointive board of directors of the district to levy taxes. This question was fully considered by us and determined adversely to the contention of defendant in *Golden Gate Bridge & Highway Dist.* v. *Felt,* 214 Cal. 308 . . . , and *Pasadena* v. *Chamberlain,* 204 Cal. 653 . . . ." (215 Cal. at p. 586.)

In *Joint Highway Dist. No. 13* v. *Hinman* (1934) 220 Cal. 578 [32 P.2d 144], the court rejected an argument that the levying of a tax by an appointive board of a highway district organized under the Joint Highway District Act violated California Constitution, article XI, section 13. The court stated: "The act does not grant or delegate to any commission, private corporation, or individual power to make, control, appropriate, supervise or interfere with any improvement, money or property of any of the cities within the boundaries of the District, nor does it give to the boards of supervisors of the counties of Alameda and Contra Costa, or either of said boards, or to the directors of the Joint Highway District, any power to trench

upon any of the things mentioned in section 13 of article XI of the Constitution relating to municipal affairs. [Citation.] The collection of the tax in this case is for a state purpose—the development of the highway system of the state—and the legislature has the power to provide for such taxation by appointive boards in such districts. (*Golden Gate Bridge etc. Dist.* v. *Felt,* 214 Cal. 308, 321 et seq. . . .)." (220 Cal. at p. 588.)

But the case of *Golden Gate Bridge etc. Dist.* v. *Felt, supra,* 214 Cal. 308, cited in *Joint Highway Dist. No. 13,* points out that the board members of such a highway district were appointed by the boards of supervisors of the affected counties. (See *Golden Gate Bridge etc. Dist., supra,* 214 Cal. at p. 313.)

Our review of these cases, as well as of others not expressly mentioned here, leads us to conclude that the present article XI, section 11 of the California Constitution means just what it says: that the Legislature may not delegate to a private person or body the power to levy taxes. The section does not contain any exception for any particular type of tax, "regional" or otherwise. We therefore need not address the question of whether there is any factual dispute about whether the subject tax is "regional" or "local." Any such dispute would not be an issue of "material fact" (Code Civ. Proc., § 437c, subd. (c)) because the Legislature may not delegate to a private person or body the power to levy any tax—"regional," "local" or otherwise.

The judgment is affirmed.

Vartabedian, J., and Buckley, J., concurred.

A petition for a rehearing was denied January 10, 1996, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 20, 1996.